HOWARD BLYTHE, Petitioner-Appellee and Cross-Appellant, v. MICHAEL P. LANE, Director of the Department of Corrections, *et al.*, Respondents-Appellants and Cross-Appellees.

Fifth District   No. 5—87—0853

Opinion filed February 9, 1990.

Neil F. Hartigan, Attorney General, of Springfield (Shawn W. Denney, Solicitor General, Terence M. Madsen, Assistant Attorney General, and Douglas K. Smith, of counsel), for appellants.

Howard B. Eisenberg, of Southern Illinois University, of Carbondale, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

Howard Blythe was convicted of murder on November 13, 1971, and sentenced to not less than 35 nor more than 70 years' imprisonment. (*People v. Blythe* (1974), 17 Ill. App. 3d 768, 308 N.E.2d 675.) He was paroled from physical custody of the Department of Corrections on October 31, 1983. Blythe applied for discharge from parole through his parole agent in October of 1986. Without a hearing the Prisoner Review Board denied discharge, stating in its recommendation regarding discharge:

> "The Board feels the best interest of the parolee and the community would be served by a longer period of supervision."

Blythe brought an action for *mandamus* and *habeas corpus* in the circuit court of Jackson County, advancing two arguments: (1) that section 5—8—1(d)(1) of the Unified Code of Corrections (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(d)(1)) limits the time on parole for persons convicted of murder to three years; (2) that his State and Federal constitutional rights to due process of law were violated by the manner in which the prisoner review board disposed of his case.

The circuit court found that the statute does not limit Blythe's parole period to three years, but remanded the case to the Prisoner Review Board because the record failed to show any basis of the Board's decision. The State appeals that portion of the judgment granting relief to Blythe, raising the specific argument that a parolee has no liberty interest in being discharged from parole prior to the expiration of his sentence sufficient to require some form of due process if his request for early discharge is denied.

Mr. Blythe cross-appeals, citing two issues for our review: (1) whether the period of parole supervision is limited to no more than three years under section 5—8—1(d)(1) of the Unified Code of Corrections and whether that period is to be added on to the maximum possible period of imprisonment; and (2) whether petitioner is entitled to a hearing before the Prisoner Review Board.

The Unified Code of Corrections section 3—3—8(a) provides that "[t]he length of parole *** shall be as set out in Section 5—8—1 unless sooner terminated." (Ill. Rev. Stat. 1987, ch. 38, par. 1003—3—

8(a).) Section 5—8—1 provides in pertinent part:

"(d) Except where a term of natural life is imposed, every sentence shall include as though written therein a term in addition to the term of imprisonment. For those sentenced under the law in effect prior to February 1, 1978, such term shall be identified as a parole term. *** Subject to earlier termination under Section 3—3—8, the parole *** term shall be as follows:

(1) for first degree murder or a Class X felony, 3 years." Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(d).

Petitioner asserts that his parole term began when he was paroled on October 31, 1983, and that under section 5—8—1(d), it ended three years later on October 31, 1986. He argues that the statute clearly shows the legislature's intent to limit the Prisoner Review Board's revocation powers to the duration of the three-year parole term. Petitioner contends that once he completed his three-year parole term, he was entitled to discharge as a matter of law and therefore respondents had no authority to deny his discharge from their custody.

Respondents dispute such argument, and instead adopt the reasoning of the Illinois Supreme Court's holding in *People ex rel. Johnson v. Pate* (1970), 47 Ill. 2d 172, 174, 265 N.E.2d 144, 146:

"Admission to parole does not, of course, entitle a prisoner to his discharge. It is simply an alternative method by which he may serve his sentence ***. Although not confined in prison, a parolee remains at all times in the custody of the Department of Public Safety, and subject to the authority of the Parole and Pardon Board until expiration of the sentence."

Respondents contend that the mandatory parole term in section 5—8—1(d) cannot begin to run until after the maximum term of imprisonment is satisfied, either by actual incarceration or by discretionary parole. Concurrent with this appeal, the Illinois Supreme Court has decided this very issue in the case of *Faheem-El v. Klincar* (1988), 123 Ill. 2d 291, 527 N.E.2d 307.

In *Faheem-El v. Klincar* (1988), 123 Ill. 2d 291, 527 N.E.2d 307, petitioner was convicted of murder and sentenced to an indeterminate term of 30 to 90 years' imprisonment. Ten years later he was paroled. Approximately 3½ years after first being paroled, petitioner was arrested and charged with delivering $30 worth of cocaine. A judge found him eligible for bail; however, petitioner's release was thwarted when the prisoner review board issued a parole violator warrant against petitioner. A parole revocation hearing was conducted wherein it was found petitioner had violated his parole. He was ordered incarcerated. Mr. Faheem-El filed with the Illinois Supreme

Court an original petition for writ of *habeas corpus*, alleging that his imprisonment pursuant to a parole revocation order was unlawful. Petitioner argued that his parole term began when he was paroled on October 5, 1983, and that under section 5—8—1(d) *of the Unified Code of Corrections*, it ended three years later on October 5, 1986. As he was not arrested for delivering cocaine until April 5, 1987, which was nearly six months after the date petitioner claimed his period of parole ended, petitioner claimed that he did not violate his parole.

The Illinois Supreme Court denied the petition for writ of *habeas corpus*. Upon review of the language of section 5—8—1, and the legislature's reasoning behind the statute, the court held that the *length of parole* set forth in section 5—8—1 includes any remaining period of the maximum term of imprisonment and, in addition, the mandatory parole term. (*Faheem-El*, 123 Ill. 2d at 300, 527 N.E.2d at 310.) The justices in *Faheem-El* reasoned that based upon the historical evolution of the statutes governing parole, the purpose of mandatory periods of parole in section 5—8—1 was to enhance, not reduce, the Department of Correction's control over an inmate and parolee. (*Faheem-El*, 123 Ill. 2d at 301, 527 N.E.2d at 312.) This finding is consistent with the previous holdings of the supreme court and our own appellate court that parole alters only the method and degree of confinement during the period of commitment. *People v. Williams* (1977), 66 Ill. 2d 179, 187, 361 N.E.2d 1110, 1114; *Kindhart v. Mizell* (1981), 101 Ill. App. 3d 631, 632, 428 N.E.2d 551, 552.

In light of our supreme court's recent ruling, we decline to accept the construction of the Code of Corrections offered by petitioner in the case at bar. We abide by the holding of the supreme court in *Faheem-El* and affirm the circuit court's finding insofar as it held that section 5—8—1 does not limit petitioner's parole period to three years.

The second issue on appeal raises the question of whether petitioner is entitled to a hearing before the Prisoner Review Board (Board) when he seeks early discharge from parole.

Petitioner puts much emphasis on the case of *United States ex rel. Scott v. Illinois Parole & Pardon Board* (7th Cir. 1982), 669 F.2d 1185, *cert. denied* (1982), 459 U.S. 1048, 74 L. Ed. 2d 617, 103 S. Ct. 468, in arguing that the Illinois statutes governing parole release give rise to a constitutionally protected liberty interest. The petitioner in *Scott* was serving a 25- to 40-year sentence for murder. He alleged that he served the minimum amount of time required under the sentence imposed on him, but had twice been denied parole based on the seriousness of the offense. Petitioner Scott sought immediate release

from incarceration, alleging as grounds that he had a constitutionally protected liberty interest in parole and that the Prisoner Review Board violated his fourteenth amendment rights in not giving him a constitutionally sufficient reason for denial of parole. The United States Court of Appeals for the Seventh Circuit held that the Illinois parole release statute at issue (Ill. Rev. Stat. 1979, ch. 38, par. 1003—3—5(c)) was practically identical to the Nebraska statute in *Greenholtz v. Inmates of the Nebraska Penal & Correctional Complex* (1979), 442 U.S. 1, 60 L. Ed. 2d 668, 99 S. Ct. 2100, and therefore under the rationale of *Greenholtz*, the Illinois statute created a constitutional liberty interest, namely, the presumption that an eligible inmate would be paroled unless one of the statutorily specified grounds for denial was found to exist. *Scott*, 669 F.2d at 1190.

■ We note that *Scott* appears to be contrary to the prevailing law in Illinois, which holds that parole is in the nature of a gift. (*Harris v. Irving* (1980), 90 Ill. App. 3d 56, 62, 412 N.E.2d 976, 980.) Moreover, the fallacy of petitioner's reliance on *Scott*, in arguing that the parole discharge statute invokes a constitutional liberty interest mandating a hearing prior to denying discharge, is that *Scott* concerned the Illinois parole release statute (Ill. Rev. Stat. 1979, ch. 38, par. 1003—3—5). We are herewith concerned with the Illinois Unified Code of Corrections discharge statute. (Ill. Rev. Stat. 1987, ch. 38, par. 1003—3—8.) The intrinsic difference between parole and discharge is clearly set forth in the definitional section of the Unified Code of Corrections section 3—1—2, which defines *discharge* as "the final termination of a commitment to the Department of Corrections." (Ill. Rev. Stat. 1987, ch. 38, par. 1003—1—2(g).) Parole is defined as "the conditional and revocable release of a committed person under the supervision of a parole officer." (Ill. Rev. Stat. 1987, ch. 38, par. 1003—1—2(k).) There is a vast difference between the denial of parole and a State's refusal to commute a lawful sentence. *Connecticut Board of Pardons v. Dumschat* (1981), 452 U.S. 458, 466, 69 L. Ed. 2d 158, 166, 101 S. Ct. 2460, 2465.

In the case at bar petitioner alleges that the discharge procedures of the Board denied him procedural due process. In particular, petitioner argues that the record fails to show any reasonable basis for the Board's decision to deny discharge. Petitioner asserts that if permitted to have a hearing before the Board, such will afford the Board an opportunity to articulate a reasoned basis for its action, thereby complying with minimal due process requirements. In support of his position, petitioner cites the Board's "Commendation Regarding Discharge," which was made part of the record on appeal. That docu-

ment was the only record given petitioner stating the reason for denial of his discharge. Aside from personnel statistics of petitioner, the commendation states that while on release, petitioner has not had any arrests nor has he violated his parole. Under a paragraph entitled *"Agent Summary,"* the report states:

"Face-to-face—10-3-86. Subject's adjustment *continues to be* above average. He has maintained full-time employment since his release and has always displayed a positive attitude. He also appears to be a very good father and family man. He will have completed three years of supervision on 10-31-86.

Discharge: _xx_ Recommended _____ Not Recommended."

Without delineating the basis for its action, the Board denied recommending the petitioner's discharge. The preprinted explanation for denial was checked on the form and read, "The Board feels the best interest of the parolee and the community would be served by a longer period of supervision."

That a State has no duty to establish a parole system is well established in Illinois. (*Harris v. Irving* (1980), 90 Ill. App. 3d 56, 62, 412 N.E.2d 976, 980.) Parole in Illinois is in the nature of a gift rather than a legal right; a prisoner cannot invoke it at his will and has no right to demand that he be discharged before the expiration of the maximum term of his sentence. (*Perry v. Bensinger* (N.D. Ill. 1973), 362 F. Supp. 195, 197; *Greenholtz,* 442 U.S. 1, 60 L. Ed. 2d 668, 99 S. Ct. 2100.) We must be mindful, however, that although the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole discharge, the Illinois discharge statute may create an *expectation of discharge* protected by the due process clause of the fourteenth amendment. (See *Greenholtz,* 442 U.S. at 12, 60 L. Ed. 2d at 678, 99 S. Ct. at 2106.) Liberty interests protected by the fourteenth amendment may arise from two sources: the due process clause itself and the laws of the States. *Hewitt v. Helms* (1983), 459 U.S. 460, 466, 74 L. Ed. 2d 675, 685, 103 S. Ct. 864, 868-69.

We start with the premise that discharge is not part of a criminal prosecution, and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole discharge. Discharge arises subsequent to the criminal prosecution and imposition of sentence. (*Morrissey v. Brewer* (1972), 408 U.S. 471, 480, 33 L. Ed. 2d 484, 494, 92 S. Ct. 2593, 2600.) We focus, therefore, on the question whether the Illinois legislature has created a liberty interest protected by the due process clause through its enactment of the dis-

charge statute. (Ill. Rev. Stat. 1987, ch. 38, par. 1003—3—8.) Using the two-prong analysis the Supreme Court adopted in *Greenholtz*, we can determine whether such a liberty interest exists via the Illinois discharge statute.

In *Greenholtz* (442 U.S. 1, 12, 60 L. Ed. 2d 668, 678, 99 S. Ct. 2100, 2106), the court held that the Nebraska parole statute created the expectancy of release and thus it conferred some measure of constitutional protection. The court based its finding on what it called "the statute's unique structure and language," namely the explicit mandatory language in connection with requiring specific substantive predicates. This analysis has been used in finding other State statutes as creating a constitutionally protected liberty interest. See *Greenholtz*, 442 U.S. 1, 60 L. Ed. 2d 668, 99 S. Ct. 2100; *Hewitt v. Helms* (1983), 459 U.S. 460, 74 L. Ed. 2d 675, 103 S. Ct. 864; *Board of Pardons v. Allen* (1987), 482 U.S. 369, 96 L. Ed. 2d 303, 107 S. Ct. 2415.

In this case, section 3—3—8(b) reads:

"(b) The Prisoner Review Board may enter an order releasing and discharging one from parole or mandatory supervised release, and his commitment to the Department, when it determines that he is likely to remain at liberty without committing another offense." (Ill. Rev. Stat. 1987, ch. 38, par. 1003—3—8(b).)

It is clear from a review of this section that the legislature has adopted discretionary language, stating that the Board *may* enter an order, upon a finding that a parolee is likely to remain at liberty without commiting another offense. This is in contrast to the Nebraska statutory procedures described in *Greenholtz*, which expressly mandated that the Nebraska Board of Parole *shall* order the inmate's release *unless* it decided that one of four specified reasons for denial was applicable. (*Greenholtz*, 442 U.S. at 11, 60 L. Ed. 2d at 678, 99 S. Ct. at 2106.) Our Illinois discharge statute, with no definitions and no mandatory language, appears to create no analogous duty or constitutional entitlement. (See *Connecticut Board of Pardons v. Dumschat* (1981), 452 U.S. 458, 466, 69 L. Ed. 2d 158, 166, 101 S. Ct. 2460, 2465.) Rather, section 3—3—8 gives the Illinois Prisoner Review Board discretionary authority to discharge a parolee from a lawfully imposed sentence.

We are not unmindful of petitioner's argument that while mandatory rather than discretionary language is a factor to consider, one must consider the totality of the statutory framework to determine if a liberty interest was created. It is too narrow a reading of

*Greenholtz* to hold that because a statute lacked the precise *shall/unless* language and structure of Nebraska's statute, it did not give rise to a constitutionally protected liberty interest. (*Scott,* 669 F.2d at 1188.) Under the statutory analysis of *Greenholtz,* we must also analyze whether specific criteria or substantive predicates are spelled out in the questioned statute. The only criterion imposed on the Board under section 3—3—8, in making a discharge determination, is that the Board exercise its discretion "when it determines that [the parolee] is likely to remain at liberty without committing another offense." (Ill. Rev. Stat. 1987, ch. 38, par. 1003—3—8.) We discount the theory that this sole criterion amounts to a procedural guideline which creates an expectancy interest in parole discharge. Unlike the Nebraska statute in *Greenholtz* and those cases which have held statutes to confer a constitutionally protected liberty interest, the statute at issue does not specify the conditions under which discharge is to be granted. Section 3—3—8(b) directs the Board to use its discretionary power in applying statutorily unspecified criteria to determine whether to order discharge, once the Board finds the parolee *is likely to remain at liberty* without committing an offense. In fact there is no statute directing the Board as to what reports, testimony or evidence it must consider in making its section 3—3—8 finding. This is in direct contrast to the parole release statute, section 3—3—5, which operates in conjunction with section 3—3—4, directing the Board as to what documents and evidence it *shall* consider in making its parole determination. (Ill. Rev. Stat. 1987, ch. 38, pars. 1003—3—4, 1003—3—5.) The statute at issue does not specify criteria or substantive predicates to be used by the Board in determining when a parolee is likely to remain free without violating the law. We are thereby persuaded that the discretionary language of section 3—3—8, coupled with the absence of specified criteria to be applied by the Board, demands the conclusion that no protected liberty interest was created by the statute.

The requirement of a hearing that petitioner suggests is constitutionally required would provide at best a negligible benefit to the parties. As the "Commendation Regarding Discharge" stated in this case, there was before the Board a summary of the agent's findings as to parolee's adjustment to his home and community. Petitioner argues in his brief on appeal that, if allowed a hearing before the Board, he would show that he has been on parole for five years without incident, has worked full time, and has supported himself, his wife and his wife's daughter. It is apparent that if granted a hearing petitioner would present evidence which is substantially identical to the

evidence which was before the Board as shown in the "*Agent Summary.*" As the "Commendation Regarding Discharge" shows, the Board did have before it the records relating to petitioner's case, and as best as can be determined from the briefs and record before this court, any evidence petitioner alleges he would have produced was before the Board in the form of the "*Agent Summary.*" Petitioner contends this is not enough, and that he is entitled to know what contrary evidence, if any, the Board considered in rendering its decision. We are not prepared to require the Board to give to the parolee detailed evidentiary findings upon which it rests its discretionary determination as to discharge.

■ We find nothing in the due process concepts as they have thus far evolved that requires the Board to specify the particular *evidence* in the inmate's files or at its meeting upon which it bases the discretionary determination that an inmate is not ready for discharge. To require the parole authority to provide a hearing and issue a summary of the evidence would tend to convert the process into an adversary *proceeding and to* equate the Board's discharge determination with a guilt determination. (*Greenholtz,* 442 U.S. at 15-16, 60 L. Ed. 2d at 681, 99 S. Ct. at 2108.) A State cannot be required to explain its reasons for a decision when it is not required to act on prescribed grounds. *Connecticut Board of Pardons v. Dumschat* (1981), 452 U.S. 458, 466, 69 L. Ed. 2d 158, 166, 101 S. Ct. 2460, 2465.

Accordingly, the judgment of the circuit court is affirmed insofar as its finding that section 5—8—1 does not limit petitioner's parole period to three years and is reversed with regard to its finding that petitioner is entitled to a hearing before the Prisoner Review Board.

Affirmed in part; reversed in part.

HOWERTON and RARICK, JJ., concur.