No. 2--04--0251

______________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

______________________________________________________________________________

MIKE HYNES,

Plaintiff-Appellant,

v.

DONALD SNYDER, JR., Director of the Department of Corrections, 

Defendant-Appellee

(Michael O'Leary, Deputy Director of the Department of Corrections; Jerry Sternes, Warden of Dixon Correctional Center; Glenn

Johnson, Lieutenant of Security; and L. M. Jones, Correctional Officer, Defendants).

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

Appeal from the Circuit Court

of Lee County.

No. 03--MR--8

Honorable

David T. Fritts,

Judge, Presiding.

______________________________________________________________________________

PRESIDING JUSTICE O'MALLEY delivered the opinion of the court:

Plaintiff, Mike Hynes, a former inmate at the Stateville Correctional Center, filed a complaint for 
mandamus
 in the circuit court of Lee County.  At the time Hynes filed his complaint, Donald Snyder, Jr., was the director of the Department of Corrections (DOC), and in his complaint Hynes sought, among other things, to compel Snyder, in his official capacity, to provide 
information.  Specifically, Hynes wanted to know the factual basis for the refusal of his request for restoration of "good conduct" credits.  The circuit court dismissed Hynes' claim pursuant to section 2--615 of the Code of Civil Procedure (Code) (735 ILCS 5/2--615 (West 2002)), and he appeals.  He argues that the applicable statute entitles him to the information he seeks.  We agree.  Thus, we reverse and remand.

I.  BACKGROUND

Illinois law entitles prison inmates to statutory good conduct credits (credits).  See 730 ILCS 5/3--6--3 (West 2002).  These credits reduce the sentence of the recipient inmate and their accumulation may entitle the inmate to early release.  730 ILCS 5/3--6--3 (West 2002).  However, if after receipt of these credits an inmate engages in misconduct, his credits may be revoked and his sentence thereby increased from what it would have been had he retained those credits.  See 20 Ill. Adm. Code §107.150 (2003).  Of course, before an inmate's credits may be revoked, the inmate is entitled to certain procedural safeguards.  20 Ill. Adm. Code §
107.150 (2003).  
Also, if those credits are revoked, the inmate is entitled to a written statement of the factual basis for that revocation.  See 730 ILCS 5/3--5--1(b) (West 2002).  An inmate whose credits are revoked may, at regular specified intervals, petition for their restoration.  See 20 Ill. Adm. Code §
107.160 (2003).

During his time at Stateville, Hynes traveled the above procedural path.  His journey began in 1987, when, following a prison disciplinary hearing, he was found guilty of misconduct and his credits were revoked.  Following the loss of his credits, Hynes filed several complaints regarding the procedures by which those credits had been revoked.  Eventually, he also began at regular intervals to apply for restoration of those credits.  In the fall of 2001, one month of Hynes' credits was restored.  In March 2002, another month of Hynes' credits was restored, and another month of credits was restored in April 2002.  But on October 4, 2002, Snyder refused Hynes' request for restoration of additional credits.  He did not provide Hynes with a factual basis for his decision.

Less than four months later, on January 23, 2003, Hynes filed in the circuit 
court
 a 
pro se
 complaint 
for 
mandamus
.  In his complaint, Hynes argued that the refusal to restore his credits was improper.  Nearly four months later, in May 2003, Snyder filed a motion to dismiss Hynes' complaint.  In that motion, he argued that Hynes had failed to establish a clear right to 
mandamus
.  The circuit court agreed and dismissed Hynes' complaint, giving him leave to amend.  On June 23, 2003, Hynes filed his amended complaint and included a request for 
mandamus
 to compel Snyder to provide a factual basis for the refusal to restore Hynes' credits.  In considering Hynes' amended complaint, the circuit court did not address Hynes' request for information.  Instead, the circuit court concluded (1) that Snyder had discretion over whether to restore Hynes' credits and so 
mandamus
 would not issue to compel him to do so; and (2) that Hynes' claim was untimely.  The circuit court dismissed Hynes' amended complaint.  Thereafter, Hynes filed this timely appeal.
(footnote: 1)
 At some point after Hynes filed his appeal--the record does not reveal when--Roger E. Walker, Jr., replaced Snyder as director of the DOC.  Pursuant to section 2--1008(d) of the Code, Walker is substituted as the defendant in this action.  735 ILCS 5/2--1008(d) (West 2002)
 ("If any trustee  or any public officer ceases to hold the trust or office and that fact is suggested of record, the action shall proceed in favor of or against his or her successor").  The need to point this out will become clear in part II(C) of the discussion below.  For now, it is sufficient to inform the reader that throughout the remainder of this discussion we will refer to Snyder (the former director and original defendant in this action) as the former director, and we will refer to Walker (the current director and current defendant) as the Director.  We now turn to the analysis of this case.

II.  ANALYSIS

We begin by setting out the standard of review.  A motion to dismiss pursuant to section 2--615 challenges the legal sufficiency of the complaint.  
Bajwa v. Metropolitan Life Insurance Co.
, 208 Ill. 2d 414, 421 (2004).  Dismissal is appropriate only if, viewing the allegations in the light most favorable to the plaintiff, it is clear that no set of facts can be proved that would entitle the plaintiff to relief.  
Bajwa
, 208 Ill. 2d at 421.  We review 
de novo
 a circuit court's decision to dismiss a complaint pursuant to section 2--615.  
Bajwa
, 208 Ill. 2d at 421. 

The circuit court read Hynes' complaint as seeking only restoration of his credits.  The circuit court did not consider Hynes' claim that he was entitled to information regarding the refusal to restore his credits.  However, Hynes did raise that claim on the face of his amended complaint, and he focuses on that claim on appeal.  Thus, our decision, too, will focus on this issue.  Resolving it will require us to consider what section 3--5--1(b) of the Unified Code of Corrections (730 ILCS 5/3--5--1(b) (West 2002)) requires of prison officials.

Before we reach that issue, however, we must address three preliminary arguments made by the Director.  First, we must consider whether, as the circuit court found, Hynes' claim is time-barred.  Second, we must determine whether Hynes' claim is moot.  Third, we must determine whether, if the law requires that Hynes be provided with the information he seeks, the Director should be required to provide that information. 

A.  
Hynes' Claim is not Time-Barred

The Director first argues that Hynes' claim is time-barred.  Specifically, the Director argues that the equitable doctrine of 
laches
 bars Hynes' claim.  However, the circuit court did not find Hynes' claim time-barred based on 
laches
.  Instead, the circuit court found that "the statute of limitations ha[d] run" on Hynes' claim.  In his brief to this court, the Director argues that the circuit court meant to say that Hynes' claim was barred by 
laches
.  We disagree.  Rather, the circuit court relied on the former director's assertion to it that a statute of limitations barred Hynes' claim.  In his motion to dismiss, the former director stated, "[Hynes'] claim is barred by the [s]tatute of [l]imitations applicable in these matters[,] which is a 6 month [s]tatute of [l]imitations."  The former director did not cite a statute from which this limitation period derived.  Nor did he mention 
laches
.  Later, at a hearing on the motion, the Attorney General, as counsel for the defense, insisted that a statute of limitations barred Hynes' claim.  And, as noted, when the circuit court ruled, it stated that a statute of limitations applied.  Based on all of this, we think that, contrary to the Director's assertion, the circuit court believed that a statute of limitations barred Hynes' claim.  The problem with that conclusion is that there is no statute to support it; yet a statute is clearly a necessary part of a statute of limitations.  This being the case, the circuit court's conclusion that a statute of limitations barred Hynes' claim cannot stand.

That said, the Director may argue 
laches
 in this appeal.  See 
People v. Pinkonsly
, 207 Ill. 2d 555, 562-63 (2003) (noting that appellees may raise for the first time on appeal arguments in support of the circuit court's judgment, even though those arguments were not raised or considered in the circuit court).  Thus, we will consider the merits of that argument.

Laches
 is an affirmative defense, requiring a defendant to satisfy a two-step inquiry.  
Bill v. Board of Education of Cicero School District 99
, 351 Ill. App. 3d 47, 54 (2004).  First, the defendant must establish that the plaintiff has delayed for an unreasonably long time in bringing his action.  
Bill
, 351 Ill. App. 3d at 54.  Second, the defendant must establish he was prejudiced by the delay.   
Bill
, 351 Ill. App. 3d at 54.  
Laches
 is not a statute of limitations.  
Christ Hospital & Medical Center v. Human Rights Comm'n
, 271 Ill. App. 3d 133, 137 (1995).  Rather, it is an equitable doctrine that  grants or denies relief based on the facts of each case.  
Christ Hospital
, 271 Ill. App. 3d at 137. 

Regarding the first step of the inquiry, unreasonable delay, the Director argues that a delay of six months in commencing a 
mandamus
 action is 
per se
 unreasonable.  In support of this proposition, the Director cites the Fourth District's decision in 
Ashley v. Pierson
, 339 Ill. App. 3d 733 (2003).  The Director then argues that Hynes waited more than six months to bring his claim.  Therefore, the Director concludes, Hynes' delay in bringing his claim was unreasonable.

The problem with this argument is that Hynes did not wait more than six months to bring his claim.  Hynes filed his complaint on January 23, 2003.  In that complaint, Hynes challenged events surrounding the refusal to restore his credits, a refusal that occurred on October 4, 2002.  Thus, even accepting a six-month 
per se
 rule, Hynes' "delay" in bringing his claim was not unreasonable.

In response to this point, the Director argues that Hynes' claim was not really aimed at getting information about the October 2002 refusal to restore his credits.  Rather, according to the Director, Hynes' claim was really directed at attacking the disciplinary hearing in which he lost those credits, a hearing that took place in 1987.  Thus, the Director concludes that Hynes has waited longer than six months to bring his claim.

This argument is without merit.   On the face of his amended complaint, the first relief Hynes asked for was "an [o]rder of [m]andamus compelling [d]efendant *** to provide factual information relied upon for restoration of good conduct credit denial."  Because Hynes expressly asked for this information, we cannot agree with the Director that Hynes' claim was not aimed at getting this information.  Thus, the Director has failed to establish an unreasonable delay as he is required to do in the first step of the 
laches
 inquiry.  Although this failure makes it unnecessary for us to address the second step of that inquiry, we will briefly consider that step as well.

As we noted above, this step of the inquiry requires the defendant to show that he was prejudiced by the plaintiff's delay.  
Bill
, 351 Ill. App. 3d at 54
.  The Director has failed, however, even to argue prejudice.  Indeed, in his brief to this court, the Director does not address the second step of the 
laches
 inquiry at all.  Thus, even assuming the Director had established an unreasonable delay, his 
laches
 argument would still fail.

In sum, we reject the Director's 
laches
 argument because he has failed to establish either unreasonable delay or prejudice.

B.  
Hynes' Claim is not Moot

The Director next argues that Hynes' claim is moot.  At the outset, the Director acknowledges that, despite Hynes' release from prison, his effort to have his credits restored is not moot because restoration of those credits could shorten the length of his parole.  Nevertheless, the Director goes on to argue that Hynes' request for information is moot because, given Hynes' release from prison, an order compelling the Director to provide Hynes with information about the refusal to restore his credits "would provide [Hynes] no tangible legal benefit."

This argument is without merit.  Hynes seeks the factual basis for the refusal of his request to have his credits restored.  Of course, if Hynes gets this information, he may improve his chances of getting those credits restored.  And, as noted, the Director acknowledges that Hynes' effort to have his credits restored is not moot because that restoration could shorten Hynes' parole.  See 
People ex. rel. Yoder v. Hardy
, 116 Ill. App. 3d 489, 492 (1983).  If Hynes' effort to have his credits restored is not moot, then we cannot agree that his effort to acquire information possibly helpful to him in that pursuit is moot.  Thus, we reject this argument.

C.  
The Director Must Comply with the Law

In his third and final preliminary argument, the Director argues that this court need not reach the question of whether the law requires him to provide the information that Hynes seeks.  This is because, according to the Director, assuming the law requires him to provide this information, he should not have to comply with the law because it is not within his power to do so.  In support of this argument, the Director reminds us that it was not he who declined to restore Hynes' credits.  Rather, it was his predecessor--Snyder--the person whom the Director replaced as the defendant in this action.  See 735 ILCS 5/2--1008(d) (West 2002).  Because he was not the one who made that decision, the Director argues he cannot provide Hynes with the information he seeks.  Thus, the Director concludes that, if the law requires him to do so, he should not be compelled to follow it.  In support of this argument the Director cites 
Freeman v. Lane
, 129 Ill. App. 3d 1061 (1985).  There, the court considered, among other things, a then recent case in which our supreme court had ruled that the director of the DOC does not have the power to award more than 90 days of meritorious good-conduct credits.  Based on this ruling, the defendant--the director of the DOC--argued that he no longer had the power 
to award more than 90 days of meritorious good-conduct credits.  Thus, he argued that 
mandamus
 should not issue to compel him to do so.  The court agreed.  And it noted that "
mandamus
 will not issue for the performance of an act which, for any reason, *** is no longer within the power of the public official involved."  
Freeman
, 129 Ill. App. 3d at 1065.  
Here, the Director argues that 
Freeman
 is analogous to this case.  Thus, he concludes that, if the law requires him to provide Hynes with information, he should not have to follow the law.

There are at least two significant problems with this conclusion.  First, 
Freeman
 is distinguishable from the present case.  In 
Freeman
, the law removed from the defendant the power to do the act at issue.  
Freeman
, 129 Ill. App. 3d at 1065.  By contrast, in the present case, the law does not prohibit the Director from providing the information Hynes seeks.  Whether it requires him to do so is a different issue, one we will address below.  But assuming it does, we cannot agree with the Director that the difficulty he would face in complying with Hynes' information request is akin to the difficulty he would face if this court issued a writ of 
mandamus
 compelling him to violate the law.  Thus, the Director's reliance on 
Freeman
 is misplaced.  Second, contrary to the Director's suggestion, we do not believe that such happenstance as the changing of directors should determine to what extent Hynes' legal rights will be enforced.  If Hynes has a right to receive information from the director of the DOC, and the director of the DOC fails to give Hynes that information, then 
mandamus
 may issue to compel the director of the DOC--whoever that is--to provide that information.  This result does not change merely because the director of the DOC who initially failed to comply with the law and the current director of the DOC are not the same person.  We reject the Director's argument to the contrary.

In passing, we note that the Director has failed to allege any facts in support of his contention that it would be difficult for him to provide Hynes with the information sought.  Indeed, he says nothing beyond noting that the director of the DOC who made the decision no longer holds that position.  The Director does not say that the information is unavailable.  Thus, even if the Director's argument had merit (which it does not), his failure to allege any factual basis in support of that argument would require us to reject it.

In sum, if the law requires the Director to provide the information sought, the Director must provide that information.  Likewise, if it is impossible to provide the information sought, the Director must explain why.

D.  
The Law Requires the Director to Provide the Information Sought

Last, the Director argues that section 3--5--1(b) of the Unified Code of Corrections (730 ILCS 5/3--5--1(b) (West 2002)) does not require him to provide Hynes with the information he seeks.  This argument requires us to consider the proper construction of section 3--5--1(b).

Whether section 3--5--1(b) requires the Director to provide the information sought is an issue of first impression.  However, our role when construing a statute is well established.  Our primary objective is to determine and give effect to the intent of the legislature.  
People v. Effler
, 349 Ill. App. 3d 217, 219 (2004).  To determine legislative intent, we look to the language of the statute, which is " 'the most reliable indicator of the legislature's objectives in enacting a particular law.' "  
In re Detention of Lieberman
, 201 Ill. 2d 300, 308 (2002), quoting 
Michigan Avenue National Bank v. County of Cook
, 191 Ill. 2d 493, 504 (2000).  We must afford that language its plain, ordinary, and popularly understood meaning.  
Lieberman
, 201 Ill. 2d at 308.  If that language is unambiguous, we may not depart from the language and read into it exceptions, limitations, or conditions.  
People v. Lavallier
, 187 Ill. 2d 464, 468 (1999).

As required, we begin with the language of the statute.  The language of section 3--5--1(b) is, in relevant part, as follows.  "If the Department *** makes a determination under this Code which affects the length of the period of confinement or commitment, the committed person and his counsel shall be advised of factual information relied upon by the Department *** to make the determination ***."  730 ILCS 3--5--1(b) (West 2002).   In other words, any time a decision affecting the length of commitment is made, the committed person is entitled to know the factual basis for that decision. 

Here, the decision at issue was whether to restore Hynes' credits.  This decision determined whether 
the length of Hynes' commitment would be shortened.  The question is whether that decision affects the length of Hynes' commitment.  We think the answer is clearly yes.  Thus, affording the words of the statute their plain and ordinary meaning as we are required to do, we conclude that this is a decision that affects the length of Hynes' commitment.  

The Director responds that this is not the type of decision that the statute was intended to address.  Rather, the Director argues that the statute was intended to apply only to the initial decision to revoke an inmate's  credits.  The Director, however, does not point us to any language in the statute that supports this conclusion.  For example, the Director does not explain why, had the legislature intended the statute to cover only the initial revocation, it did not say so in the statute.  Had the legislature intended such a limited reading of the statute, it could have simply qualified the word "decision."  It did not, and well-settled principles of statutory construction prevent us from doing so now.  
Harrison v. Hardin County Community Unit School District No. 1
, 197 Ill. 2d 466, 471-72 (2001) (noting that courts may "not depart from the plain 
language of [a statute] by reading into it exceptions, 
limitations
, or conditions that conflict with the express legislative intent" (emphasis added)).
 

In conclusion, we hold that, when the director of the DOC decides whether to restore good-conduct credits, section 3--5--1(b) requires the director to provide a factual basis for that decision.  Thus, in seeking 
mandamus
 to compel the production of that information, Hynes has stated a claim on which relief can be granted. 

III.  CONCLUSION

For the reasons stated, the judgment of the circuit court of Lee County is reversed and the case is remanded.

Reversed and remanded.

HUTCHINSON and KAPALA, JJ., concur.

FOOTNOTES
1:
1
 Hynes was released from prison in February of 2004 and is currently on parole.