FLYNT JULES LEE, Plaintiff-Appellant, v. CRAIG FINDLEY, Defendant-Appellee.

Fourth District   No. 4—04—0973

Opinion filed September 26, 2005.

Flynt Jules Lee, of Chicago, appellant *pro se*.

Lisa Madigan, Attorney General, of Chicago (Gary S. Feinerman, Solicitor General, and Leslye Jones-Beatty, Assistant Attorney General, of counsel), for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

In May 2004, plaintiff, Flynt Jules Lee, *pro se* filed a petition for

writ of *mandamus* relief, alleging that defendant, Craig Findley, chairman of the Prisoner Review Board, failed to perform certain ministerial duties and violated his due-process rights during June 2003 parole-revocation proceedings. In August 2004, Findley filed a motion to dismiss Lee's petition; and in November 2004, the trial court granted Findley's motion. Lee appeals, and we affirm in part, reverse in part, and remand for further proceedings.

## I. BACKGROUND

Initially, we note that although both parties refer to Lee as having been released on "parole," he had been released on mandatory supervised release. As part of Public Act 80—1099 (Pub. Act 80—1099, eff. February 1, 1978 (1977 Ill. Laws 3264)), which included sweeping changes to the Unified Code of Corrections, the concept of parole was eliminated and mandatory supervised release was created. See 730 ILCS 5/3—3—1 (West 2002) (setting forth the guidelines regarding the establishment and appointment of the Prisoner Review Board); see also 730 ILCS 5/3—3—3(c) (West 2002) (providing that individuals sentenced after the effective date shall be released under mandatory supervised release after serving their determinate sentence minus their accrued credit for good behavior). Nonetheless, because both Lee and Findley use the terms "parole," "parolee," and "parole revocation" in their briefs to this court, we will also use those terms in this decision.

In December 2002, Lee, an inmate at the Shawnee Correctional Center, was released on parole. Lee's parole was subject to a number of conditions, including that he was required to (1) wear an electronic bracelet that monitored his whereabouts and (2) remain at his residence. In April 2003, a State parole agent cited Lee in a parole-violation report. The report indicated that on the afternoon of April 23, 2003, an electronic-monitoring-system company determined that Lee was not at his residence. A company representative telephoned Lee's residence, and an unidentified woman who answered the telephone confirmed that Lee was not there. The representative then notified a state parole agency supervisor about Lee's absence. Shortly thereafter, two parole agents went to Lee's residence and were unable to locate him. Several days later, Lee was arrested for violating three conditions of his parole, in that he failed to (1) notify his parole agent of a change in his residence (condition 9), (2) follow his parole agent's specific instructions (condition 15), and (3) comply with the Prisoner Review Board's orders (condition 16).

Following a June 2003 hearing, a three-member panel of the Prisoner Review Board found that Lee violated the conditions of his

parole as alleged. The Board's written order indicated that Lee's parole was revoked based on his violating parole conditions 9, 15, and 16.

Later in June 2003, Lee filed a grievance with Findley, alleging that he had been denied a fair and impartial parole-revocation hearing. In November 2003, Findley, as chairman of the Prisoner Review Board, denied Lee's grievance.

In May 2004, Lee *pro se* filed a petition for writ of *mandamus* relief, alleging that the Prisoner Review Board had refused to perform certain ministerial duties despite Lee's "clear entitlement to performance of the specific duties." In particular, the petition alleged that the Board failed to provide Lee with (1) a statement of facts supporting the revocation of his parole and (2) a statement of the evidence the Board relied upon in revoking his parole. Lee's petition also alleged that the Board had denied him (1) an impartial hearing officer and (2) evidence that would have supported his innocence—namely, the transcripts of the recordings made by the electronic-monitoring-system company on April 23, 2003.

In August 2004, Findley filed a motion to dismiss Lee's petition under section 2—615 of the Code of Civil Procedure (Civil Code) (735 ILCS 5/2—615 (West 2002)), arguing that (1) Lee's petition was barred by the doctrine of *laches*, and (2) Lee had failed to establish a right to the requested relief. (On appeal, Findley has abandoned his *laches* argument.) Later that month, Lee filed a motion opposing Findley's motion to dismiss. In November 2004, the trial court granted Findley's motion to dismiss.

This *pro se* appeal followed.

## II. ANALYSIS

### A. Petition for *Mandamus*

■ "*Mandamus* is an extraordinary remedy to enforce, as a matter of right, 'the performance of official duties by a public officer where no exercise of discretion on his part is involved.'" *Lewis E. v. Spagnolo*, 186 Ill. 2d 198, 229, 710 N.E.2d 798, 813 (1999), quoting *Madden v. Cronson*, 114 Ill. 2d 504, 514, 501 N.E.2d 1267, 1272 (1986). A trial court will grant a writ of *mandamus* "only if a plaintiff establishes a clear, affirmative right to relief, a clear duty of the public official to act, and a clear authority in the public official to comply with the writ." *People ex rel. Ryan v. Roe*, 201 Ill. 2d 552, 555, 778 N.E.2d 701, 703 (2002).

### B. The Trial Court's Dismissal of Lee's Claim That the Prisoner Review Board Denied Him Due Process

Lee argues that the trial court erred by dismissing his claim that

the Prisoner Review Board denied him due process when it failed to comply with the United States Supreme Court's decision in *Morrissey v. Brewer*, 408 U.S. 471, 33 L. Ed. 2d 484, 92 S. Ct. 2593 (1972). Specifically, he contends that his claim stated a cause of action in that it alleged that the Prisoner Review Board failed to provide him with a written statement as to (1) the evidence the Board relied upon in revoking his parole and (2) the Board's reasons for revoking his parole. We agree.

A motion to dismiss under section 2—615 of the Civil Code (735 ILCS 5/2—615 (West 2002)) challenges the legal sufficiency of the complaint. *Hynes v. Snyder*, 355 Ill. App. 3d 394, 397, 823 N.E.2d 231, 234 (2005). In reviewing a section 2—615 dismissal, we must decide whether the allegations, when construed in the light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted. *Bajwa v. Metropolitan Life Insurance Co.*, 208 Ill. 2d 414, 421, 804 N.E.2d 519, 525 (2004). We review *de novo* a trial court's decision to dismiss a petition for writ of *mandamus*. *Lucas v. Taylor*, 349 Ill. App. 3d 995, 998, 812 N.E.2d 72, 75 (2004).

■ In *Morrissey*, the Supreme Court held that an individual whose parole is subject to revocation has a protectible liberty interest. (Although the *Morrissey* Court used the term "parole," its holdings apply with equal force to mandatory supervised release, which is analogous to parole. See *People ex rel. Johnson v. Pate*, 47 Ill. 2d 172, 174, 265 N.E.2d 144, 146 (1970) (a parolee remains in custody and is subject to the authority of the Parole and Pardon Board (now known as the Prisoner Review Board) until his sentence expires); *Barney v. Prisoner Review Board*, 184 Ill. 2d 428, 430, 704 N.E.2d 350, 351 (1998) (an individual on mandatory supervised release remains in the legal custody of the Department of Corrections for the duration of his release period); 730 ILCS 5/3—3—7 (West 2002) (setting forth conditions that apply equally to both parolees and releasees).) The Court explained that the revocation of parole "calls for some orderly process, however informal." *Morrissey*, 408 U.S. at 482, 33 L. Ed. 2d at 495, 92 S. Ct. at 2601. The Court further held that minimum due-process requirements exist at two stages of a typical parole revocation: (1) the arrest of a parolee and the preliminary hearing and (2) the parole-revocation hearing. *Morrissey*, 408 U.S. at 485-87, 33 L. Ed. 2d at 496-98, 92 S. Ct. at 2602-04. In terms of the revocation-hearing stage, the *Morrissey* Court held that due process entitles the parolee to the following: (1) written notice of the alleged parole violations; (2) disclosure of the evidence against him; (3) the opportunity to be heard in person and present witnesses and documentary evidence; (4) the right to confront and cross-examine witnesses, unless the hearing body finds

good cause for not allowing such confrontation; (5) a neutral and detached hearing body, such as a traditional parole board; and (6) "a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." *Morrissey*, 408 U.S. at 488-89, 33 L. Ed. 2d at 498-99, 92 S. Ct. at 2604.

∎ In addition, the Illinois legislature has authorized the Prisoner Review Board to promulgate its own rules regarding the conduct of its work. 730 ILCS 5/3—3—2(d) (West 2002). One of the rules adopted by the Board specifically addresses revocation hearings. See 20 Ill. Adm. Code § 1610.150, as amended by 13 Ill. Reg. 3063, 3063 (amended February 28, 1989). Section 1610.150(i) of the Illinois Administrative Code provides as follows:

> "[I]f a panel [of the Prisoner Review Board] determines that the parolee has violated any of the terms and conditions of parole, it shall issue a written statement as to the evidence relied on and the reasons for revoking parole. The parolee shall receive a copy of this statement." 20 Ill. Adm. Code § 1610.150(i), as amended by 13 Ill. Reg. 3063, 3063 (amended February 28, 1989).

Although section 1610.150(i) refers only to a parole violation, reading part 1610 in its entirety makes clear that subsection (i) applies to mandatory-supervised-release revocation as well. In particular, section 1610.160, which addresses dispositions following the Board's determination of a "parole violation," provides that in adult cases, the Board may "revoke the parole" and reconfine the violator for a certain period of time, depending upon whether the individual (1) had violated conditions of his mandatory supervised release or (2) had been adjudicated prior to the February 1, 1978, effective date of Public Act 80—1099 (Pub. Act 80—1099, eff. February 1, 1978 (1977 Ill. Laws 3264)) (and, thus, had violated conditions of his parole). See 20 Ill. Adm. Code § 1610.160, as amended by 13 Ill. Reg. 3063, 3063 (amended February 28, 1989).

∎ In this case, Lee's petition for writ of *mandamus* alleged that the Prisoner Review Board failed to provide him with (1) a statement of facts supporting the revocation of his parole and (2) a statement of the evidence the Board relied upon in revoking his parole. Lee attached to his petition the Board's June 2003 written order, which consisted of a preprinted form. Three boxes on the form were checked off to indicate that (1) Lee had been declared a parole violator (with a handwritten notation that Lee violated parole on April 23, 2003); (2) he had violated parole conditions (with a handwritten notation that the conditions he violated were numbers 9, 15, and 16); and (3) his parole was revoked. The order was signed by three members of the Prisoner Review Board. The form contained a section entitled

"Evidence Relied Upon," under which the following categories were listed with a check-off box beside each one: (1) "Counselor's Report," (2) "Police Report," (3) "Witnesses' testimony," and (4) "Own admission." However, none of those categories had been selected. In addition, the form contained the statement, "The [Prison Review] Board finds that this evidence is sufficient because," followed by nine blank lines. However, nothing had been written in the space provided. On this record, we conclude that Lee's petition states a cause of action for *mandamus* relief. We thus reverse the trial court's dismissal of this claim and remand for further proceedings. In so doing, we are not suggesting that this claim may not be properly denied in further proceedings. In addition, because Lee does not challenge the court's dismissal of his other claims, we affirm the court's dismissal of those claims.

In reversing the trial court's dismissal of Lee's claim, we reject Findley's contention that Lee is not entitled to *mandamus* relief because (1) he received a parole-violation report and the Prisoner Review Board's final order and (2) when viewed together, those documents provide (a) a statement of the evidence relied upon in revoking his parole and (b) the Board's reasons for revoking his parole. In support of his contention, Findley relies, in part, on extraneous facts not apparent on the face of Lee's *mandamus* petition. However, Findley's motion to dismiss (which he concedes was brought under section 2—615 of the Civil Code, not section 2—619(a) (735 ILCS 5/2—615, 2—619(a) (West 2002))) attacked the legal sufficiency of Lee's petition. His motion did not raise an affirmative factual defense to negate or refute Lee's cause of action, as would a section 2—619 motion. See *Jackson v. Callan Publishing, Inc.*, 356 Ill. App. 3d 326, 331, 826 N.E.2d 413, 421 (2005) (a section 2—615 motion to dismiss attacks the legal sufficiency of the plaintiff's complaint by alleging defects appearing on the complaint's face; such a motion does not raise affirmative factual defenses). Thus, Findley cannot raise for the first time on appeal such affirmative factual matters.

As a final matter, we reject Findley's contention that the Fifth District's decision in *Blythe v. Lane*, 194 Ill. App. 3d 451, 551 N.E.2d 680 (1990), requires a different result. In that case, a parolee argued that the Prisoner Review Board was required to provide a hearing and issue a summary of the evidence relied upon in denying his request that his parole be discharged early. *Blythe*, 194 Ill. App. 3d at 455, 460, 551 N.E.2d at 682, 685. The Fifth District rejected that argument, upon concluding that the parole-discharge statute (Ill. Rev. Stat. 1987, ch. 38, par. 1003—3—8(b) (now 730 ILCS 5/3—3—8(b) (West 2002))) did not create a protectible liberty interest. *Blythe*, 194 Ill. App. 3d at 459, 551 N.E.2d at 685. *Blythe* simply did not address parole-revocation proceedings or examine what process is due in such proceedings.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment in part, reverse in part, and remand for further proceedings.

Affirmed in part and reversed in part; cause remanded.

TURNER and KNECHT, JJ., concur.