45 Ill. App.2d 425 (1964)
195 N.E.2d 751
Thomas W. Kadon, Plaintiff-Appellee,
v.
Board of Fire and Police Commissioners of the Village of River Forest, Illinois, Defendant-Appellant, and Thomas B. Riley, Defendant.
Gen. No. 49,001.
Illinois Appellate Court  First District, Third Division.
January 9, 1964.
*426 Charles L. Michod, of Chicago, for appellant.
Robert O. Mansell and Arthur M. Solomon, of Chicago, for appellee.
MR. JUSTICE DEMPSEY delivered the opinion of the court.
This is an appeal from a declaratory judgment which held that the eligible list for the post of lieutenant in the Village of River Forest Fire Department created by the examination held May 2, 1951, was entitled to priority over an eligible list created by an examination held for such post on August 31, 1956. The judgment further held that the promotion of the defendant, Thomas B. Riley, to the post of lieutenant from the 1956 eligible list was illegal and void. The issues are (1) whether the action of the Board of Fire and Police Commissioners in ordering the 1956 examination and establishing a new eligibility roster was proper and (2) whether the appellee is estopped from bringing this action by reason of delay in the prosecution of his claim.
[1] The facts are as follows: the appellee, Thomas W. Kadon, has been a fireman with the River Forest Fire Department since 1948. In 1951 an examination for the post of lieutenant was held by the Board. Kadon took the examination and placed third on the promotional register. Those who placed first and second were promoted to the rank of lieutenant prior to August 1956 when the Board held another promotional examination. At the time of the 1956 test two remained on the 1951 list: Kadon and Kenneth H. Dalluege. Dalluege took the second examination but Kadon refused; he informed the Board and the Chief of the Fire Department that he would stand on his *427 rights under the 1951 examination. A member of the three-man board, John J. Callahan, told him that he did not have to take the examination. When the 1956 list was compiled, Riley was given first place, Dalluege seventh place and Kadon's name was added to the list and placed second. With the exception of Kadon, the results were based on the written examination, plus the rating given each participant by the Chief of the Fire Department, plus one point for each year of service. Kadon's position was arrived at by taking his grade from the 1951 eligibility list and adding one point for each year of service from 1951 to 1956. In its report to the Trustees of the Village, the Board recommended that Riley be appointed to the first vacancy.
A vacancy for lieutenant occurred about December 22, 1960, and Riley was selected for the position, effective January 1, 1961. On or about December 22, 1960, Kadon sent a written demand for his commission as lieutenant to the President of the Village and the Board. He received no answer and he thereupon instituted this action for declaratory judgment in April 1961.
Although no resolution or ordinance was passed cancelling the 1951 list, the Board admits that it was cancelled by the calling of the 1956 examination. No legal justification is suggested for integrating part of the cancelled 1951 list into the 1956 result, which the Board did by using the grade Kadon received in the 1951 examination to determine his rank on the 1956 list. By intermingling the lists the Board produced a new promotional register which was not the product of a competitive examination. The only explanation attempted is that Kadon consented to this procedure. Two Board members testified that they understood that Kadon wanted his name placed on the new list. Both admitted, however, that Kadon never said anything *428 of the kind to them, and neither one told what caused him to have this impression.
Furthermore, the Board's action in cancelling the 1951 list is contrary to the decision of this court in People ex rel. Varallo v. Linskey, 12 Ill. App.2d 76, 138 NE2d 714 (1956). Unlike the present statute, the 1956 statute pertaining to the promotion of firemen did not expressly establish the power of cancelling a promotional register. Ill Rev Stats 1955, c 24, §§ 14-8, 14-9. The Board maintains that while the 1956 statute did not specifically stipulate a time limit for a promotional register, a reasonable time was implied and that the power to fix the duration of an eligibility list was necessary for the execution of the express powers and duties of the Board. This argument was answered in the Varallo case. In that case the plaintiffs, policemen in the Village of Skokie, Illinois, took a promotional examination in January 1953 and were placed on an eligible list. In July 1955, the Commissioners of Fire and Police passed a resolution cancelling the list and struck the names of the eligibles, pursuant to a rule of the Commission that "names remaining on eligible registers for two years and one day shall continue to remain ... unless the same shall have been stricken... by the Commission." A vacancy occurred in the office of sergeant in August 1955, a promotional examination was given in October 1955 and a new eligible list was posted; but the plaintiffs did not take the test and their names did not appear on the list. This court considered the fact that the Legislature had expressly included the power to strike promotional lists in other civil service acts, and concluded that there must have been a purpose in withholding such power from the Fire and Police Commissioners Act which was first enacted in 1903 and amended many times thereafter. This court recognized the practical problems that could arise in the absence *429 of the authority to cancel eligibility lists, but, nevertheless, held that these were problems to be considered by the Legislature and that the Skokie commissioners had no power to adopt the rule under which they sought to cancel the police sergeants' list.
The defendants would distinguish the Varallo case from the present one because in Varallo the promotional register posted in 1953 was cancelled two and one-half years later, whereas in the present case the 1951 list was cancelled over five years later. They also would like this court to give effect to the legislative intent, evidenced they say by the enactment in 1959 of the statute which provides that:
"The board shall strike off the names of candidates for promotional appointment after they have remained thereon for more than 3 years from July 22, 1959, provided there is no vacancy existing which can be filled from the promotional register." Ill Rev Stats (1961) c 24, § 10-2-15.
The Varallo decision cannot be distinguished in its application to the present case. The same ultra vires act was committed: an eligible list was cancelled without statutory authority to do so. Although the 1959 Amendment may have eliminated the possibility of this problem ever presenting itself again, nevertheless it did not validate the illegal cancellation in 1956 of the 1951 list, and the legislative purpose expressed in 1959 cannot be read into another statute enacted many years before 1959.
[2-5] The second issue to be considered is that of laches. Laches is the neglect to assert a right or claim which, taken together with the lapse of time and circumstances causing prejudice to the opposite party, will bar a complaint in equity. Schoenbrod v. Rosenthal, 36 Ill. App.2d 112, 183 NE2d 188. There is no fixed rule as to what amounts to laches; its *430 existence usually is determined by the facts and circumstances of each case. The question of laches is addressed to the sound discretion of the chancellor, and his decision will not be set aside unless it is so clearly wrong as to amount to an abuse of discretion. Dennis v. Hite, 28 Ill. App.2d 429, 172 NE2d 36; Trustees of Schools of Tp. 38 v. Chicago, 308 Ill. App. 391, 32 NE2d 180.
[6] The defendants contend that Kadon's suit should be barred because there was a span of about four and one-half years between the 1956 examination and the time when his complaint was filed. Delay in prosecuting a cause of action is one of the elements of laches and its importance is relative to the action involved. In some types of action it is the most important element. For example it has been held that anyone seeking to rescind a transaction on the ground of fraud must elect to do so promptly after learning of the fraud. Schoenbrod v. Rosenthal, supra. More than ordinary promptness is required of a claimant if the property involved in a transaction is of fluctuating value. Pyle v. Ferrell, 12 Ill.2d 547, 147 NE2d 341. And in civil service cases, where prolonged delay may easily prejudice governmental bodies, impair orderly procedures and work to the disadvantage of third parties, time is an essential factor. The most stringent requirement timewise is in those cases brought by civil service employees to compel reinstatement and payment of back salaries after discharges alleged to be illegal. A rule has been established that if these actions are not brought within six months of the discharge they will be barred on the ground of laches, unless a reasonable explanation can be given for the delay. People ex rel. Cifaldi v. Wilson, 38 Ill. App.2d 302, 187 NE2d 353; People ex rel. Ballinger v. O'Connor, 13 Ill. App.2d 317, 142 NE2d 144. The present case, although it concerns Kadon's civil service rating, *431 is far removed from the last category, and we must look to the other elements of laches to see if his suit should be barred, to see if there is a reasonable explanation for the lapse of time, and to see if the delay prejudiced the Board or injured the third party, Riley, who has been performing the functions of lieutenant in the River Forest Fire Department for three years.
The elements of laches were recapitulated in Pyle v. Ferrell, supra:
"What facts will combine to constitute laches is to be determined in the light of the circumstances of each case; however, it is pointed out in 19 Am Jur, Equity, sec 498, that a suit is held to be barred on the ground of laches or stale demand `where and only where' the following facts are disclosed: (1) Conduct on the part of the defendant giving rise to the situation of which complaint is made and for which the complainant seeks a remedy; (2) delay in asserting the complainant's rights, the complainant having had notice or knowledge of defendant's conduct and the opportunity to institute a suit; (3) lack of knowledge or notice on the part of the defendant that the complainant would assert the right on which he bases his suit, and (4) injury or prejudice to the defendant in the event relief is accorded to the complainant or the suit is held not to be barred."
How does the present case conform to these elements? (1) It was the conduct of the defendant Board which gave rise to the situation of which Kadon complains. The period of delay began when the Board committed the invalid act upon which his complaint is based. (2) It is true that in 1956 Kadon had a remedy against the Board to compel it to correct its error by reinstating the 1951 list but Kadon did not *432 delay in asserting his rights. He took his stand before the 1956 examination was held and he maintained it afterwards. The day after the 1956 list was posted he again spoke to Commissioner Callahan. He was told that if any appointment were to be made it would be from the 1951 list, that this list had to be exhausted before the 1956 list could be used. With such assurance, there was no need for him to take legal action at that time. As the number one man on the 1951 list, Kadon could reasonably expect appointment to the first vacancy. There was always the possibility that the Board might recognize its error (as it certainly should have done after the decision in the Varallo v. Linskey case) and withdraw the 1956 list. There was the further possibility that the Board, acknowledging the correctness of his stand, but not being disposed to do away with the 1956 list, might appoint him to the first vacancy because, as one of the three men on that list, he could have been so appointed. Ill Rev Stats (1955) c 24, § 14-9; (1959) c 24, § 10-2-15. The Board's error was not consummated in 1956 when it recommended Riley for the first vacancy which might occur; the error was consummated in 1960 when it appointed Riley to the vacancy. As soon as the Board moved, Kadon moved. When the Board made its decision in December 1960 to appoint Riley to the impending vacancy, Kadon acted immediately. A letter of protest was sent to the Board and legal action was commenced less than four months after Riley started working as a lieutenant. (3) There was no lack of notice on the part of the Board as to Kadon's assertion of his rights. The Board was aware of his stand from the beginning and knew his reason for not participating in the 1956 examination. Kadon at no time slept on his rights and the Board at no time was deceived by his adherence *433 to those rights. It had full knowledge that he would demand the position when a lieutenancy became available. (4) Nothing Kadon did damaged the defendants or lulled them into changing their position. The Board has not been prejudiced by his conduct and there has been no change in their relationship. In the event relief is accorded Kadon, Riley, who has enjoyed the fruits of the lieutenancy for three years, will be injured only by the deprivation of something not rightfully his.
There has been no unreasonable delay. Kadon's complaint is not to be barred by laches. The equitable doctrine of laches will not be applied to deprive him of relief rightfully his and to enable the Board to escape the consequences of its wrongful act. The judgment of the Circuit Court will be affirmed.
Affirmed.
SCHWARTZ, P.J. and McCORMICK, J., concur.