PATRICIA LONG, Plaintiff-Appellant, v. TAZEWELL/PEKIN CONSOLIDATED COMMUNICATIONS CENTER *et al.*, Defendants-Appellees.

Third District   No. 3—91—0895

Opinion filed October 22, 1992.

G. Edward Murphy, of Reynolds, Murphy & Associates, of Peoria (Patrick W. Hayes, of counsel), for appellant.

Valerie M. Umholtz, of Moehle, Swearingen & Associates, of Pekin, for appellee Tazewell/Pekin Consolidated Communications Center.

Stewart J. Umholtz, Assistant State's Attorney, of Pekin, for other appellees.

PRESIDING JUSTICE BARRY delivered the opinion of the court:

Plaintiff, Patricia Long, appeals a second time from the dismissal of her complaint for wrongful termination of employment by defendant Tazewell/Pekin Consolidated Communications Center (T/P CCC), a not-for-profit, joint public safety corporation of the City of Pekin and the County of Tazewell. Plaintiff sought damages and reinstatement to her position as a telecommunications operator/police dispatcher. In addition to her employer, the city and the county, plaintiff named as defendants four individual directors of the not-for-profit corporation.

Defendants initially jointly moved to dismiss the complaint on the ground that plaintiff was an at-will employee without contractual

rights. The circuit court of Tazewell County granted defendants' motion, and that ruling was reversed on appeal to this court. (*Long v. Tazewell/Pekin Consolidated Communication Center* (1991), 215 Ill. App. 3d 134, 574 N.E.2d 1191.) On remand, defendants jointly moved for summary judgment and for dismissal of the complaint on the ground of *laches*. After a hearing, the court granted defendants' motion to dismiss, and plaintiff brought this appeal. For reasons that follow, we reverse.

According to the allegations in her complaint, plaintiff was employed by T/P CCC from January 1979 until her termination on September 13, 1988. Reasons given for her discharge included: (1) sleeping on duty; (2) failing to dispatch a call; (3) unprofessional conduct; (4) failing to maintain a home telephone; and (5) improper interdepartmental communications. On September 16, 1988, plaintiff appealed her termination pursuant to the T/P CCC employee manual of rules and regulations. Her appeal was heard by the T/P CCC board of directors on October 21, 1988. It was denied on October 24, 1988.

Plaintiff concurrently pursued her right to unemployment compensation, and on October 27, 1988, she received a favorable decision from the referee for the Illinois Department of Employment Security. According to the referee's decision, plaintiff was terminated for reasons not connected with her work. T/P CCC, in turn, appealed this decision to the Board of Review of the Illinois Department of Employment Security. The Board's decision was handed down on April 14, 1989, confirming the finding of the referee in favor of plaintiff. Plaintiff filed this complaint for wrongful termination in the circuit court on August 28, 1989.

In its order of dismissal, the court found: (1) that plaintiff's cause of action accrued on October 24, 1988; (2) that plaintiff's 10-month delay in filing the complaint was "based upon unrelated, noncontrolling, separate legal issues" and that, therefore, plaintiff had offered no reasonable cause for delay; and (3) that defendant T/P CCC had been prejudiced in fact by the delay. In this appeal, plaintiff takes issue with each of the court's findings of fact and further argues that the court's dismissal was an abuse of discretion because defendants did not assert the defense of *laches* until 23 months after plaintiff's complaint was filed.

■ By case law, a six-month *per se laches* rule has been developed specifically for causes of action such as this seeking reinstatement and back pay following an alleged wrongful termination in the public employment sector. That is, a delay in filing suit of more than six months from the date of discharge is *per se* unreasonable and will

justify time-barring on the ground of *laches* "unless a reasonable explanation can be given for the delay." (*Kadon v. Board of Fire & Police Commissioners* (1964), 45 Ill. App. 2d 425, 430, 195 N.E.2d 751, 754.) Application of the rule, as most recently summarized in *Coleman v. O'Grady* (1990), 207 Ill. App. 3d 43, 565 N.E.2d 253, requires a two-pronged analysis addressing first, whether the delay prejudiced the employer, and second, whether plaintiff has shown a reasonable excuse for the delay. Generally, prejudice to the public employer will be found where the employer would have to pay both a replacement worker's salary and a successful plaintiff's back wages during the period of delay. However, notwithstanding such inherent prejudice to the public employer, a discharged plaintiff may nonetheless prevail in the face of a *laches* defense if the plaintiff shows a valid excuse for the delayed court action.

■ Initially, we do not find convincing plaintiff's argument that she did not become aware of the facts upon which her cause of action was based until April 14, 1989. The facts upon which plaintiff relied in her pursuit of unemployment compensation benefits were essentially the same as those needed to pursue this suit for wrongful termination. On October 27, 1988, plaintiff learned that she had successfully presented her position to the unemployment compensation referee. The only additional fact that plaintiff gleaned on April 14, 1989, was that the referee's determination was upheld on appeal. The decision of the Board of Review reciting its rationale did not add any crucial fact needed to pursue the instant cause of action. Plaintiff may not have known the legal sufficiency of the facts within her knowledge, but she cannot seriously deny that she had adequate notice of the grounds being alleged by her employer for her discharge and the procedural context of her termination on October 24, 1988. Thus, we find no error in the circuit court's factual determination that plaintiff's cause of action accrued on October 24, 1988, when her appeal before the T/P CCC board of directors was denied.

Similarly, with respect to the issue of prejudice to the public employer defendant, we hold that the circuit court was not in error. Plaintiff does not dispute that defendants hired a replacement for her position on October 30, 1988, within a week of the decision of the board of directors upholding plaintiff's discharge. Given the public safety nature of plaintiff's position, defendants cannot be faulted for their prompt hiring of a replacement, and the fact that they have done so is sufficient to establish prejudice.

This leads us to the second prong of the *laches* analysis—whether, notwithstanding prejudice to the employer, plaintiff's excuse for the

10-month delay in bringing suit is nonetheless sufficient to avoid dismissal on the equitable ground of *laches*. Defendants argue, and the circuit court reasoned, that plaintiff's unemployment compensation was not "related, controlling litigation" of the legal issues underlying the complaint for wrongful termination. Such was the basis upon which the court in *People ex rel. Casey v. Health & Hospitals Governing Comm'n* (1977), 69 Ill. 2d 108, 370 N.E.2d 499, determined that the delay in that case was excusable.

In *Casey*, plaintiffs brought their suit for reinstatement as hospital employees 23 months after they were terminated pursuant to a mandatory retirement policy. In another, prior action other institutional employees had challenged the compulsory retirement program. That suit was decided by the appellate court in the employees' favor three months before the *Casey* plaintiffs filed their action. The court ruled, accordingly, that based on the allegations in the complaint setting forth the history of the prior litigation, "it is a reasonable and logical inference that all relators at bar were awaiting the outcome of the prior, controlling litigation. Therefore, the *mandamus* complaints sufficiently demonstrated why there had not been an earlier institution of the action." 69 Ill. 2d at 114-15, 370 N.E.2d at 502.

■ In this case, of course, the pursuit of unemployment compensation benefits and the instant action for reinstatement and back pay are brought in entirely separate fora and do not involve identical issues. Therefore, unlike *Casey*, it cannot be said that the unemployment compensation action was "controlling" litigation. But that does not end the inquiry. The question is whether it was *reasonable* for plaintiff to have awaited the outcome of defendants' appeal of the unemployment compensation claim before pursuing her common law action in court.

This is not a case like *Coleman v. O'Grady* (1990), 207 Ill. App. 3d 43, 565 N.E.2d 253, in which plaintiff simply sat on his right to administrative review of his termination. In *Coleman*, plaintiff, a deputy sheriff, knew that he was entitled to a hearing before the Cook County Sheriff's Merit Board before he could be properly discharged for his alleged misconduct. He was discharged by the sheriff without having been given a hearing on April 27, 1987, but did nothing to pursue his rights until he filed suit for wrongful termination in August 1988. In rejecting plaintiff's argument that his delay was reasonable because he was awaiting the hearing to which he was entitled, the court noted that nothing the sheriff or his agents had said or done induced plaintiff into believing that he would be given a hearing before the merit board. By contrast, in this case, plaintiff and her employer

were in continuous controversy over the question of whether plaintiff's termination was justified from September 16, 1988, three days after plaintiff's discharge, until April 14, 1989, when the Board of Review of the Department of Employment Security denied T/P CCC's appeal.

Contrary to defendants' position, we find that plaintiff's pursuit of unemployment compensation benefits in this case is closely related to the instant action for wrongful termination. Certainly, the disputed issue in the administrative appeal, *i.e.*, whether plaintiff was discharged for misconduct related to her employment or for other, nonspecified reasons, is relevant to her charge of wrongful termination. Further, we do not believe it unreasonable for a litigant to resist the impulse to pursue multiple claims involving a related issue simultaneously. Moreover, it would not be unreasonable for a plaintiff to await a favorable determination by the State agency and then to attempt to negotiate a settlement with the employer without incurring the expense of courtroom litigation.

Finally, for purposes of determining whether equity would require a dismissal of the suit, it is noteworthy that the delay between October 27, 1988, and April 18, 1989, was occasioned by defendants', not plaintiff's, pursuit of administrative appeal rights. Defendants had every legal right to exhaust their rights before the Department of Employment Security, and plaintiff had no legal impediment to embroiling her employer in a lawsuit during the pendency of the appeal. However, to permit defendants to apply the nearly six-month delay involved in that appeal against a *laches* time clock running against plaintiff does not bespeak equity.

In sum, we find that plaintiff has set forth a reasonable excuse for her failure to file suit during the period of the unemployment compensation appeal. Since plaintiff filed her suit little more than four months after the termination of the administrative action, we hold that plaintiff is not guilty of *laches*. Having so found, we do not reach plaintiff's argument that defendants should be estopped from defending on the ground of *laches* because of their own delay in raising the defense.

For the foregoing reasons, the judgment of the circuit court of Tazewell County is reversed, and we remand this cause for further proceedings.

Reversed; cause remanded.

STOUDER and SLATER, JJ., concur.