FIRST DIVISION

June 28, 2004

No. 1-03-2079

MARIE BILL, ) Appeal from the

) Circuit Court of

Plaintiff-Appellee, ) Cook County.

)

v. ) 

) No. 01 L 014869

)

THE BOARD OF EDUCATION OF )

CICERO SCHOOL DISTRICT 99, ) Honorable

) Paddy H. McNamara,

Defendant-Appellant. ) Judge Presiding.

JUSTICE GORDON delivered the opinion of the court:

Defendant, the Board of Education of Cicero School District 99 (District 99 or district), appeals the trial court's order granting plaintiff, Marie Bill's motion for summary judgment on the grounds that District 99 failed to give Bill statutory notice that she would not be rehired for the 2000-01 school year.  As a result of the judgment, Bill was awarded damages equal to what would have been her salary for the contested school year, prejudgment interest, costs and attorney fees.  District 99 contends that Bill's action was barred by the doctrine of 
laches
 or, in the alternative, that she received sufficient notice she would not be rehired.  The district further contends that Bill was not entitled to attorney fees under the Attorney's Fees in Wage Actions Act (705 ILCS 225/0.01 
et seq.
 West 2002).  Because we find there are issues of fact yet to be determined, we reverse and remand for trial.

BACKGROUND

On November 4, 1998, after the school year had begun, plaintiff, Marie Bill, was hired as a full-time probationary
(footnote: 1) English-as-a-second-language (ESL) teacher by District 99 for the remainder of the 1998-99 school year.  Bill's employment contract for the 1998-99 school year was dated February 11, 1998, and provided "[t]his contract is null and void in June of 1999."  The following school year (1999-2000), Bill was again hired to fill an ESL position after the school year began.  She began teaching on October 18, 1999, and her employment contract, dated November 4, 1999, again stated, "[t]his contract is null and void in June of 2000."  At the end of the 1999-2000 school year, Bill had not received an assignment for the 2000-01 school year.

Bill stated during her deposition that because she had not yet received a job assignment for the 2000-01 school year in July or August of 2000, she began looking for a teaching job.  She retrieved her teacher's certificate from District 99 and on August 8, 2000, she sent a letter to Cindy Mosca, the ESL coordinator for District 99.  The letter expressed an interest in obtaining an ESL teaching position in District 99 for the approaching school year.  Subsequently, on August 31, 2000, Bill faxed a letter to Dr. Edward Aksamit, assistant superintendent for District 99, expressing her interest in working for the district and informing him that she had received no response to her August 8 letter to Mosca.  Bill reportedly also interviewed for a teaching job at Downers Grove North High School during the summer.

On September 5, 2000, Bill telephoned Tom Smith, a representative for Local No. 571 of the Illinois Federation of Teachers (the union).  Bill told Smith about the letter she faxed to Aksamit and stated that she never received notice of her termination the year before.  Smith advised Bill that the district was required, under section 24-11 of the School Code (105 ILCS 5/24-11 (West 2002)), to provide her with written notice 45 days prior to the end of the 1999-2000 school year, advising her whether she would be reemployed for the 2000-01 year.  Because she had not received such notice, the Code provided Bill with the right to a teaching position in District 99 for the 2000-01 school year.  Bill testified in her deposition that she was surprised to get this information, as she was unaware of her rights under the School Code.  That same month, Bill telephoned Aksamit and informed him that she never received any notice regarding whether she would be rehired for the 2000-01 school year.  She stated that, thereafter, she relied on Smith to contact the district on her behalf.

In the fall of 2000, Smith spoke with Dr. Anthony Scariano, superintendent of District 99, and Aksamit, who told Smith that the terms of Bill's 1999-2000 contract, which provided that the contract would be null and void as of June 2000, sufficiently notified Bill that she would not be employed as a teacher in District 99 in the 2000-01 school year.  Although Smith argued to Scariano that the contract's "null and void" language did not satisfy the School Code's notification requirement and requested that Bill be given a teaching position immediately, Scariano refused. 

On March 14, 2001, Smith wrote a letter to Scariano stating the union's position and urging the district to reemploy Bill.  The district refused in writing in April.  The union's attorney then sent a legal opinion to the district on August 17, 2001, and the district's attorney responded with its legal opinion on November 6, 2001.  The opinions addressed the issue of notice under section 24-11 of the School Code (105 ILCS 5/24-11 (West 2002)).

On November 16, 2001, Bill filed a complaint against the district.  Count I alleged that District 99 failed to provide her with the required statutory notice under section 24-11 of the School Code regarding whether she would be employed for the 2000-01 school year.  She argued that as a result of this failure, the district was required to reemploy her.  She therefore requested her salary as if she had been reemployed for the 2000-01 term and argued she should be reemployed for the remainder of the 2001-02 term.  Under this count, Bill further requested recovery for the costs of the litigation and reasonable attorney fees pursuant to the Attorneys Fees in Wage Actions Act (705 ILCS 225/0.01 
et seq.
 (West 2002)).  In count II, Bill requested reenrollment in the district's health insurance program.

In response, District 99 filed a motion to dismiss count I of Bill's complaint for failure to state a cause of action (735 ILCS 5/2-615 (West 2002)).  The district argued that Bill's complaint was barred by the doctrine of 
laches
 because it was filed almost 19 months after she was allegedly notified of her rights by her union representative.  It further argued that Bill received proper notification she would not be reemployed for the 2000-01 school year due to the terms of her one-year employment contract.  The trial court granted the motion only as to any claims beyond the 2000-01 school year, including reinstatement.  The court denied the motion in all other respects, including a rejection of the 
laches
 doctrine.  District 99 thereafter filed a motion for partial summary judgment as to the attorney fees requested pursuant to the Attorneys Fees in Wage Actions Act in count I of Bill's complaint.  The district asserted that a proper written demand for such fees was not made pursuant to the Act.  This motion was also denied.

Bill subsequently filed a motion for summary judgment as to the undismissed allegations in count I of her complaint, arguing that she was denied statutory notice under section 24-11 as a matter of law.  She argued that Aksamit's deposition contradicted the district's contention that the "null and void" language in Bill's contract provided her with sufficient notice that she would not be reemployed for the 2000-01 school year.  In this regard, Aksamit testified at his deposition that the section 24-11 letters, notifying teachers whether they would be retained for the following school term, were generally sent to all probationary teachers.  He stated that to his knowledge, all of the other probationary ESL teachers, aside from Bill, received written notice not later than 45 days before the end of the 1999-2000 school year whether they would be rehired for the next school year.  He stated that although only teachers who were hired after the school year began received contracts with the "null and void" language, such teachers normally would still receive notice before the end of the school year that they were going to be rehired where their performance had been acceptable.  Moreover, teachers whose performance was not acceptable, would get "an evaluation that says they did not meet the standards and they're not going to be rehired."  Aksamit stated that Bill did not receive any notice whatsoever.  In addition, Aksamit specifically testified to the following:

"Q. When Ms. Bill signed the contract in October of '99 for the '99-2000 school year *** would she have known if she was going to be re-employed or not re-employed *** at that time?

A. At that time?

Q. Yes.

A. No.

Q. Okay. Nor did you, correct?

A. Correct.

* * *

Q. *** [A]t the end of the '99-2000 school year, there would have been a Board meeting which took up questions of which teachers would or would not be re-employed?

A. It's in March.

Q. Okay.  In March.  Okay.  And would that have been – the March meeting, the March 2000 meeting, would that have been the meeting that the issue of Ms. Bill would have been brought up whether or not she would be re-employed or not?

A. Yes.

Q. And do you attend the Board meetings?

A. Yes.

Q. Do you recall specifically that the issue of Miss Bill being brought up?

A. No.

Q. Now, but that would have been the meeting where the determination would have been made that she would not be re-hired, correct?

A.  That would have been the meeting to determine whether or not she would have not been rehired, correct.

* * *

Q. Now, the letter that teachers receive, a probationary teacher would receive telling them that they would not be rehired or they were going to be rehired, is that a letter -- [is] that type of notice signed by the president of the Board of Education?

* * *

A. *** [I]t's usually signed by the Board president.

* * *

Q. Okay.  It has to be Board action?

A. Yes.

* * *

Q. *** [W]ould a similar letter go out to teachers who are not going to be retained for the next school year?

A. Similar.

* * *

Q. And typically it's the March meeting of a school year where decisions are made to hire or not or to retain or not retain a given probationary teacher?

A. That's correct."

In response to Bill's motion for summary judgment, District 99 first contended that section 24-11 did not require notice independent of that provided by the "null and void" language in Bill's contract; second, it reasserted the affirmative defense of 
laches
.

On June 30, 2003, the trial court granted summary judgment in favor of Bill on count I.  The court found that Bill was not provided with proper notice that she would not be reemployed for the following school year, pursuant to section 24-11 of the School Code.  It further determined that the doctrine of 
laches
 did not bar Bill's complaint for being untimely as Smith had been attempting to negotiate with the district and convince the district to reemploy Bill.  The court awarded Bill $27,164, the salary she would have earned had she been reemployed for the 2000-01 year.  She was further awarded 5% per year prejudgment interest pursuant to section 2 of the Illinois Interest Act (815 ILCS 205/2 (West 2002)), totaling $3,732.20, and costs in the amount of $804.70.  On June 17, 2003, the trial court further awarded Bill attorney fees pursuant to the Attorneys Fees in Wage Actions Act (705 ILCS 225/0.01 
et seq.
 (West 2002)), amounting to $16,517.50.
  Bill voluntarily dismissed count II of her complaint.  

On appeal, District 99 contends that the trial court improperly granted summary judgment in Bill's favor, as the doctrine of 
laches
 barred her complaint and the "null and void" language in her employment contract properly notified her that she would not be reemployed for the 2000-01 school year.  The district further contends that the trial court erred in granting Bill's petition for attorney fees.  We reverse and remand.

ANALYSIS

Summary judgment is properly granted where the pleadings, depositions, admissions and affidavits show there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  735 ILCS 5/2-1005(c) (West 2002).  In considering a motion for summary judgment, the motion and supporting documents must be viewed in a light most favorable to the nonmoving party.  
Pyne v. Witmer
, 129 Ill. 2d 351, 358, 543 N.E.2d 1304, 1308  (1989).  Although the nonmovant need not prove his case at this stage, he must present facts which, if believed, would arguably entitle him to judgment.  
Robidoux v. Oliphant
, 201 Ill. 2d 324, 335, 775 N.E.2d 987, 994 (2002).  The granting of a motion for summary judgment is reviewed 
de novo
.  
Crum & Forester Managers Corp. v. Resolution Trust Corp.
, 156 Ill. 2d 384, 390, 620 N.E.2d 1073, 1077 (1993).

The defendant district first argues that the court improperly granted Bill's motion for summary judgment because the doctrine of 
laches
 barred her cause of action.  The 
laches
 doctrine is defined as " 'the neglect or omission to assert a right which, taken in conjunction with a lapse of time and circumstances causing prejudice to the opposite party, will operate as a bar to a suit.' "  
Lee v. City of Decatur
, 256 Ill. App. 3d 192, 195, 627 N.E.2d 1256, 1258 (1994), quoting 
People ex rel. Heavey v. Fitzgerald
, 10 Ill. App. 3d 24, 26, 293 N.E.2d 705, 707 (1973).  A plaintiff must have knowledge of his right but fail to assert it in a timely manner for 
laches
 to apply.  
Sundance Homes, Inc. v. County of Du Page
, 195 Ill. 2d 257, 270, 746 N.E.2d 254, 262 (2001).  
Laches
 is an affirmative defense, requiring a two-prong analysis, which addresses whether the employer was prejudiced by the delay, as stated above, and whether the plaintiff has demonstrated a reasonable excuse for the delay.  
Long v. Tazewell/Pekin Consolidated Communications Center
, 236 Ill. App. 3d 967, 970, 602 N.E.2d 856, 857-58 (1992).

In this case, defendant cites to 
Schultheis v. City of Chicago
, 240 Ill. 167, 88 N.E. 563 (1909), for the employment of a 
per se
 six-month 
laches
 rule developed specifically for cases involving the termination of a public employee.  In 
Schultheis
, the plaintiff, a terminated policeman, brought a petition for 
mandamus
 against the City of Chicago, requesting that his name be restored to the police payroll.  The supreme court determined that "a member of the Chicago police force claiming to have been wrongfully removed would be barred by 
laches
 from his right to have the record of the civil service commissioners reviewed by 
certiorari
 if he delayed more than six months in beginning his suit, unless the delay was satisfactorily explained by the petition for the writ."  
Schultheis
, 240 Ill. at 170, 88 N.E. at 564.

This general proposition originated in 
City of Chicago v. Condell
, 224 Ill. 595, 79 N.E. 954 (1906), where the Illinois Supreme Court determined that a public servant's delay in filing a petition for common law writ of 
certiorari
 is deemed unreasonable not merely due to the lapse of time, but where a detriment or inconvenience to the public results.  
Condell
, 224 Ill. at 598, 79 N.E. at 956.  Where a public servant delays in filing his action, a detriment to the public inherently results because the restoration of the plaintiff to his prior position confers upon him the right to require the payment of his salary up to that date.  
Condell
, 224 Ill. at 599, 79 N.E. at 956. Therefore, "a party is required to act speedily in making his application and any unreasonable delay will warrant the refusal of the writ."  
Condell
, 224 Ill. at 598-99, 79 N.E. at 956.  The specific six-month rule later emerged in 
Clark v. City of Chicago
, 233 Ill. 113, 84 N.E. 170 (1908).  At the time 
Clark
 was decided, there existed a statutory method to review judgments of justices of the peace by writ of 
certiorari
, which carried with it a six-month statute of limitations.  
Clark
, 233 Ill. at 115, 84 N.E. at 171.  The 
Clark
 court analogized such review to the review of an order of removal of a police officer by the civil service commission; it thereby instituted the six-month 
laches
 rule for police officers, requiring presentation of a petition for 
writ of certiorari
 within six months of the entry of the order to be reviewed unless the officer provided a reasonable excuse for the delay.  
Clark
, 233 Ill. at 115, 84 N.E. at 171.

Since 
Schultheis
, 
Condell
 and 
Clark
, the six-month rule has been employed in various other public employee cases, including 
Summers v. Village of Durand
, 267 Ill. App. 3d 767, 643 N.E.2d 272 (1994), 
Lee
 and 
Coleman v. O'Grady
, 207 Ill. App. 3d 43, 565 N.E.2d 253 (1990).  In 
Summers
, the chief of police filed an action for breach of contract against the defendant, seeking back pay and lost benefits.  The defendant filed a motion to dismiss the complaint, asserting, among other things, that the action was barred by the 
laches
 doctrine.  The trial court dismissed the action.  In reversing the dismissal, the reviewing court held:

"Courts have devised a rule to be used in applying the doctrine of 
laches
 to causes of action brought by discharged public sector employees seeking reinstatement and/or back pay.  The rule is that a delay of longer than six months from the date of termination to the filing of suit is 
per se
 unreasonable and will justify dismissal on the ground of 
laches
 if: (a) the plaintiff can show no reasonable excuse for the delay; and (b) the employer would suffer prejudice by having to pay both a replacement worker's salary and a successful plaintiff's back wages during the period of delay."  
Summers
, 267 Ill. App. 3d at 771, 643 N.E.2d at 276.

Although
 the plaintiff in 
Summers
 waited longer than six months to file his action and offered no explanation for the delay, the court stated that there was no indication the defendant had hired a replacement worker.  Therefore, there was no indication of prejudice from the face of the complaint,
 and the cause of action was improperly summarily dismissed based on 
laches
.  
Summers
, 267 Ill. App. 3d at 771, 643 N.E.2d at 276.

In 
Lee
 and 
Coleman
, a fire fighter and police officer, respectively, sued their former employers for reinstatement and back pay.  In both cases, the courts determined that the suits were barred by the 
laches
 doctrine, as the plaintiffs waited more than six months after their dismissal to file their actions.  The court further determined that the delays were prejudicial to the defendants because they had already hired replacement workers.  Neither defendant offered a reasonable excuse for his delay.  
Lee
, 256 Ill. App. 3d at 198, 627 N.E.2d at 1260; 
Coleman
, 207 Ill. App. 3d at 46, 565 N.E.2d at 254.  Quoting 
Kadon v. Board of Fire & Police Commissioners
, 45 Ill. App. 2d 425, 430, 195 N.E.2d 751, 753-54 (1964), the 
Coleman
 court reiterated the reasoning behind the rule:

" '[I]n civil service cases, where prolonged delay may easily prejudice governmental bodies, impair orderly procedures and work to the disadvantage of third parties, time is an essential factor.  The most stringent requirement timewise is in those cases brought by civil service employees to compel reinstatement and payment of back salaries after discharges alleged to be illegal.  A rule has been established that if these cases are not brought within six months of the discharge they will be barred on the ground of laches, unless a reasonable explanation can be given for the delay.' "  
Coleman
, 207 Ill. App. 3d at 47, 565 N.E.2d at 255.

Defendant contends the plaintiff's action here was barred by this six-month 
laches
 rule, as it was an action for wrongful termination and back wages by a public employee.  Although plaintiff urges, for the reasons discussed below, that the six-month 
laches
 rule should not apply to cases such as this one involving the dismissal of a nontenured teacher under the School Code, we disagree and see no reason to differentiate teachers from policemen, firefighters and hospital workers, as the same reasoning discussed above applies to all civil servants.

Plaintiff first contends that the 
laches
 doctrine is not applicable in this case because it
 is an equitable doctrine, which cannot be used to bar an action for monetary damages.  This argument has been previously rejected on a number of occasions.  While we agree that traditionally, statutes of limitation were generally applied to legal actions and the 
laches
 doctrine was applied to those actions based in equity, such "mechanical" applications are no longer followed.  See 
Sundance Homes, Inc.
, 195 Ill. 2d at 270-71, 746 N.E.2d at 262-63. 
 Courts have applied 
laches
 to "equity-like" actions, such as 
mandamus
, to quasi-equitable suits, to actions where equitable considerations are at the heart of a claim actually based in law, as well as to purely legal claims.  27A Am. Jur. 2d Equity §
§
 149
,
 194 (1996)
; see also 
Bays v. Mathews
, 108 Ill. App. 3d 1112, 1116, 440 N.E.2d 142, 145 (1982) (
laches
 applies to 
sui generis 
procedures, such as 
mandamus
, which are equity-like)
.  For instance, in 
Schultheis
, the supreme court specifically stated that the 
laches
 defense was applicable to pseudo-equitable proceedings at law, such as actions in 
certiorari
 and 
quo warranto
.  
Schultheis
, 240 Ill. at 170, 88 N.E. at 564.  Subsequently, in 
Lee
, and 
Coleman
, the First and Fourth District Appellate Courts each explicitly stated that the 
laches
 doctrine is not limited solely to suits in equity and is applicable to cases at law in which a plaintiff seeks back pay for wrongful termination, in addition to reinstatement.  
Lee
, 256 Ill. App. 3d at 196, 627 N.E.2d at 1258 (the plaintiff's action for reinstatement and back wages was barred by 
laches
); 
Coleman
, 207 Ill. App. 3d at 52, 565 N.E.2d at 258 (same).  This approach finds full fruition in 
Summers
, where the court applied the six-month 
laches
 doctrine in an action where only monetary damages were sought.  
Summers
, 267 Ill. App. 3d at 771, 643 N.E.2d at 276.  Along these lines, we note that this action began as one seeking reinstatement and back wages, however, the reinstatement action was ultimately dismissed by the trial court, resulting in the remaining claim solely for monetary damages.  As a result, we disagree with plaintiff that the six-month 
laches
 rule cannot be applied to a public employee case seeking monetary damages in the form of back pay, particularly where the action was originally filed as one seeking reinstatement, as this one was.

Plaintiff next contends that the 
laches
 defense cannot be applied to a School Code case because the applicable statute of limitations supercedes the common law six-month 
laches
 rule.  We disagree.  Plaintiff asserts that, because the School Code does not provide its own statute of limitations, it is covered by section 13-205 of the Illinois Code of Civil Procedure, which provides for a "catch-all" five-year statute of limitations.  735 ILCS 5/13-205 (West 2002); 
Sundance Homes, Inc.
, 195 Ill. 2d at 280, 746 N.E.2d at 268.  Plaintiff argues that, where the limitations period is provided by statute, a judicially created rule, such as the six-month 
laches
 rule, cannot supplant the five-year legislated period.  Instead, the Code of Civil Procedure should supersede the common law rule.  Again, this argument fails to distinguish cases arising under the School Code from others in which the 
laches
 doctrine barred a cause of action despite the existence of an applicable statute of limitations.  As a result, we fail to see why the statute of limitations period in this case should be treated differently.  See 
Lee
, 256 Ill. App. 3d at 196, 627 N.E.2d at 1258 (dismissal of the plaintiff's action for back wages and reinstatement by the trial court on grounds of 
laches
 and the statute of limitations upheld on review solely on the basis of 
laches
);
 see also 
People ex rel. Fox v. Dunham
, 326 Ill. App. 562, 566, 63 N.E.2d 138, 140 (1945) (court held that the plaintiffs were barred from prosecuting their civil service action by the 
laches
 doctrine as well as the "catch-all" five-year statute of limitations for civil suits).  We further note that in cases outside the realm of public employees, Illinois courts, or courts applying Illinois law, have often invoked the 
laches
 doctrine in contravention to the ordinary limitations period which would apply by statute. 
 
Maksym v. Loesch
, 937 F.2d 1237, 1248 (7th
 Cir. 1991)
, citing 
Slatin's Properties, Inc. v. Hassler
, 53 Ill. 2d 325, 330, 291 N.E.2d 641, 643 (1972); 
Aiardo v. Village of Libertyville
, 184 Ill. App. 3d 653, 659, 540 N.E.2d 861, 866 (1989); 
G'Sell v. N. P. Associates, Ltd.
, 153 Ill. App. 3d 171, 175, 505 N.E.2d 1059, 1062 (1987); 
Beynon Building Corp. v. National Guardian Life Insurance Co.
, 118 Ill. App. 3d 754, 764, 455 N.E.2d 246, 253 (1983).  In 
Maksym
, the Seventh Circuit Court of Appeals reasoned that such applications did not act in contravention to the statutory time limitations because 
laches
, by requiring proof not only of unwarranted delay in bringing suit but also of harm to the defendant as a result of the delay, "is really a doctrine of estoppel rather than a substitute for a statute of limitations." 
 
Maksym v. Loesch
, 937 F.2d at 1248, citing
 
G'Sell
, 153 Ill. App. 3d at 175, 505 N.E.2d at 1061-62.

Accordingly, we need not presume that 
laches 
is in conflict with the otherwise applicable statute of limitations, as
 application of the 
laches 
doctrine is limited to instances where
 there is no reasonable excuse for the plaintiff's delay, resulting in prejudice to the defendant.  In all other instances, the statutory limitations period applies.  Therefore, 
laches
 is simply the permissible interposition of an equitable defense in an action at law.  See 
Schultheis
, 240 Ill. at 170, 88 N.E. at 564 (the 
laches
 defense may be asserted in proceedings at law); 
Di Santo v. City of Warrenville
, 59 Ill. App. 3d 931, 941, 376 N.E.2d 288, 295 (1978) (even though 
mandamus
 is an action at law and not an action in equity, 
laches
 is available as a defense).

Plaintiff nevertheless urges that the six-month 
per se laches
 defense should not be applied to a nontenured teacher's suit under section 24-11 of the School Code because none of the cases applying that defense involve suits brought by teachers.  Plaintiff's argument must fail, as there is no sound rationale for distinguishing police officers, fire fighters and hospital personnel from public school teachers.  The purpose of the 
per se
 rule is to protect the government, and as a result the taxpayers, from the dual expenses involved in paying two employees for the same job.  In this regard, all of the factors discussed above in the context of 
Schultheis
, 
Condell
, 
Summers
, 
Lee
 and 
Coleman
, which deal with other public employees, apply equally to suits involving teachers, and any distinction between them would be arbitrary.

Plaintiff cites to 
Fumarolo v. Chicago Board of Education
, 142 Ill. 2d 54, 566 N.E.2d 1283 (1990), 
Walter v. Board of Education of Quincy School District No. 172
, 93 Ill. 2d 101, 446 N.E.2d 870 (1982), and 
Bagley v. Board of Eduation of Seneca Community Consolidated School District No. 170
, 83 Ill. App. 3d 247, 403 N.E.2d 1285 (1980), cases in which teachers and principals filed actions under the School Code for reinstatement and/or back pay more than six months after their dismissal, which were not dismissed under the 
laches
 doctrine.  However, as defendant points out, 
laches
 is an affirmative defense that must be raised by the opposing party.  
City of Chicago v. Alessia
, __ Ill. App. 3d __, __, 807 N.E.2d 1150, 1159 (2004).  Because there is no indication in any of the cases cited by plaintiff that 
laches
 was raised as an affirmative defense, those cases do not support plaintiff's argument that the doctrine should not be applied to School Code cases.

Plaintiff also cites to 
Sundance Homes
 and 
Meyers v. Kissner
, 149 Ill. 2d 1, 594 N.E.2d 336 (1992), for the proposition that the 
laches
 doctrine is no longer mechanically applied to actions titled as equity actions, "particularly where such an application would frustrate the intent of the legislature."  
Sundance Homes
, 195 Ill. 2d at 271, 746 N.E.2d at 263.  However, 
Sundance Homes
 and 
Meyers
 addressed very specific areas of the law – tax/revenue and real estate – neither of which applies to the area we are concerned with here – actions by public sector employees for improper dismissal.

In 
Sundance Homes
, the claimant attempted to use the 
laches
 doctrine to expand the period within which his action could be brought beyond the applicable five-year statute of limitations.  The Illinois Supreme Court analyzed the area of tax litigation as one in which there was an expressed desire by the legislature to limit the time in which suits could be filed so as to avoid subjecting the government to the individual factual analyses required by equitable determinations.  
Sundance Homes
, 195 Ill. 2d at 271, 746 N.E.2d at 263.  Because of this clear legislative intent, the court concluded that the time bars for filing revenue and tax-related suits could not be expanded by cloaking an action as equitable and employing the 
laches
 doctrine.  
Sundance Homes
, 195 Ill. 2d at 282, 746 N.E.2d at 269.  In its analysis, the court quoted the United States Supreme Court's decision in 
United States v. Brockamp
, 519 U.S. 347, 352-53, 136 L. Ed. 2d 818, 823-24, 117 S.Ct. 849, 852 (1997), which stated:

" 'Tax law, after all, is not normally characterized by case-specific exceptions reflecting individualized equities.

The nature of the underlying subject matter–tax collection–underscores the linguistic point. ***  To read an "equitable tolling" exception into §6511 could create serious administrative problems by forcing the IRS to respond to, and perhaps litigate, large numbers of late claims, accompanied by requests for "equitable tolling" which, upon close inspection, might turn out to lack sufficient equitable justification. [Citation.] The nature and potential magnitude of the administrative problem suggest that Congress decided to pay the price of occasional unfairness in individual cases (penalizing a taxpayer whose claim is unavoidably delayed) in order to maintain a more workable tax enforcement system.  At the least it tells us that Congress would likely have wanted to decide explicitly whether, or just where and when, to expand the statute's limitations periods, rather than delegate to the courts a generalized power to do so wherever a court concludes that equity so requires.' "  
Sundance Homes
, 195 Ill. 2d at 272, 746 N.E.2d at 263-64.

These concerns are not at the forefront here.  First, we note that the 
laches
 doctrine is asserted in this case in order to shorten the length of time within which a suit may be filed, not to lengthen it, as in 
Sundance Homes
.  More overridingly, the same policy considerations articulated in the context of claims for recovery under the tax laws do not exist anywhere else, nor does the 
Sundance Homes
 case attempt to apply its holding outside the context of tax claims.  
Sundance Homes
 does not attempt to modify or change the line of decisions extending from 
Schultheis
 to 
Coleman
, which have explicitly determined that in the particular case of a public employee suing his employer for wrongful discharge, a six-month 
laches
 defense applies.  As previously discussed, this rule in no way frustrates an expressed intent of the legislature.  The supreme
 court has consistently applied the 
laches
 doctrine in such cases over the past century, and the alternative would be to subject the government to dual salary payments where a plaintiff is successful in his wrongful termination action.

Meyers
, on the other hand, is wholly inapposite to the instant cause.  In 
Meyers
, a downstream landowner filed suit against upstream landowners to recover damages caused by levees, as well as an injunction requiring their removal.  The action was not one filed against the government, but against private landowners.  In addition, the 
Meyers
 court itself provided that its decision specifically addressed real estate actions, finding that actions regarding title in real estate generally will not be barred in equity, prior to the expiration of the statute of limitations.  
Meyers
, 149 Ill. 2d at 12, 594 N.E.2d at 341.  Accordingly, neither 
Sundance
 nor 
Meyers
 supports plaintiff's arguments.

Following this determination that the 
laches
 doctrine can be applied to an action brought under the School Code, we must determine whether the doctrine could not have barred plaintiff's cause of action as a matter of law, as determined by the trial court.  As previously stated, 
laches
 serves to bar an action for back pay by a public sector employee where the action is filed more than six months after discharge (or six months after the plaintiff acquires knowledge of his right (
see 
Sundance Homes, Inc.
, 195 Ill. 2d at 270, 746 N.E.2d at 262)), the delay in filing causes prejudice to the defendant, and the plaintiff offers no reasonable excuse for the delay.  In this case, plaintiff filed her cause of action 14 months after she acquired actual knowledge that she might have a cause of action under section 24-11 of the School Code.  Specifically, plaintiff was told by Smith around September 5, 2000, that District 99 "owed" her a job under section 24-11, but she did not file her complaint until November 16, 2001.  Clearly, her complaint was filed more than six months after she acquired knowledge of her right.

Despite plaintiff's tardy filing, the trial court found that plaintiff offered a reasonable excuse for her delay.  She asserted that she was waiting for Smith to conclude negotiations with the district in order to avoid instituting legal action.  We disagree with the trial court that this was a valid excuse.
(footnote: 2)  Plaintiff was made aware of her legal right to notice under section 24-11 around September 5, 2000.  Between September 2000 and April 2001, Smith was reportedly attempting to convince the district to rehire plaintiff.  However, Smith himself testified that defendant's position, beginning in the fall of 2000, was that plaintiff had been properly notified she would not be rehired for the 2000-01 school year through her one-year contract with defendant.  He further stated that he informed plaintiff of this position in the fall.  The district did not change its position, nor did it indicate in any way that it might change its position or consider reemploying plaintiff.  The district did not induce plaintiff to wait to file her action and was in no way responsible for plaintiff's delay.  See 
Condell
, 224 Ill. at 598, 79 N.E. at 956 (excuse that the plaintiff was ignorant of the law and some of the facts was not reasonable where there was "no pretense that [defendant] was in any wise responsible for his ignorance in these respects or that it concealed or withheld from him any knowledge of either law or fact which it was its duty to disclose to him.  Appellant was in no way responsible for the delay, and certainly the penalties of such delay should not be visited upon it").  Even assuming 
arguendo
 that it was reasonable for plaintiff to wait until the conclusion of Smith's discussions with the district, those negotiations ended, at the latest, in April 2001, when defendant informed plaintiff in writing of its position.  This was seven months before plaintiff filed her complaint on November 16, 2001.  Therefore, even accepting plaintiff's excuse, she still filed her action past the six-month deadline, and the trial court erred in determining her delay was sufficiently excused.

Nevertheless, this does not automatically lead to the conclusion that plaintiff's action should have been barred.  For 
laches
 to apply, there must also be a showing of prejudice.  In this regard, citing to 
Coleman
, 207 Ill. App. 3d 43, 565 N.E.2d 253, 
People ex rel. Casey v. Health & Hospitals Governing Comm'n of Illinois
, 69 Ill. 2d 108, 370 N.E.2d 499 (1977), and 
Lee
, 256 Ill. App. 3d 192, 627 N.E.2d 1256, defendant argues that under the 
laches
 doctrine, public entities are presumed to be prejudiced where a public employee waits longer than six months to file a cause of action.  Therefore, the employer need not assert specific facts to establish prejudice.  Defendant asserts that the reasoning for this rule is that there is inherent prejudice to a public employer where the employee's delay leads to the payment of both a replacement worker's salary, as well as the plaintiff's back wages, were his action to succeed.  Although we agree that case law has found an 
inherent
 prejudice to exist in such cases, we do not believe it has instituted an absolute presumption of prejudice without the establishment of certain facts.

The inherent prejudice to which defendant refers was articulated early in the twentieth
 century with the origination of the six-month 
laches
 rule in civil service cases.  The courts reasoned the following:

" 'It is manifestly unfair, where there is disagreement as to the propriety or legality of the discharge, that the relator should lie still, and allow another person to occupy the position from which he has been removed, and draw pay for his services therein, and, after more than four months has elapsed, that he should be allowed to have this remedy by 
mandamus
 to be reinstated in office, and recover compensation for services therein, which he has not performed, and which he has for a long time, without objection, permitted another person to perform, and be paid for.' "  
Kenneally v. City of Chicago
, 220 Ill. 485, 504, 77 N.E. 155, 161-62 (1906), quoting 
People ex rel. Young v. Collis
, 39 N.Y.S. 698, 699 (1896).

Later courts agreed that prejudice to a public employer was inherent for this reason.  See 
Casey
, 69 Ill. 2d at 115, 370 N.E.2d at 502; 
Coleman
, 207 Ill. App. 3d at 48, 565 N.E.2d at 255-56; 
Lee
, 256 Ill. App. 3d at 197, 627 N.E.2d at 1259-60.  However, contrary to defendant's assertions, no court ever instituted a blanket presumption that such prejudice existed without evidence that a replacement worker had actually been hired and paid for the period identified in the plaintiff's suit.

For instance, in 
Casey
, the court stated that it recognized the inherent risk of prejudice to an employer when a public employee delays in seeking reinstatement or back pay; however, it found that the specific facts of that case showed the plaintiffs' delay did not cause the employer prejudice.  
Casey
, 69 Ill. 2d at 115-16, 370 N.E.2d at 502-03.  Therefore, prejudice was not presumed.  In addition, in 
Summers
, the court specifically recognized and accepted the six-month 
laches
 rule for public sector employees, but stated that it did not bar the plaintiff's action in that case as a matter of law because the defendant had not alleged that a replacement worker had been hired after the plaintiff's discharge.  
Summers
, 267 Ill. App. 3d at 771, 643 N.E.2d at 276.  Again, although the prejudice might be inherent, it still turned on the question of whether a replacement worker had been hired.  See also 
Long
, 236 Ill. App. 3d at 970, 602 N.E.2d at 858 (citing proof of hiring a replacement worker as sufficient to establish prejudice).

We further find that defendant misinterprets 
Coleman
 as instituting a presumption of prejudice in contravention to 
Casey
 and 
Summers
.  Citing to 
Kadon v. Board of Fire & Police Commissioners
, 45 Ill. App. 2d 425, 195 N.E.2d 751 (1964) (civil service cases will be barred by 
laches
 if not brought within six months of discharges unless a reasonable explanation can be given for the delay), 
People ex rel. Sullivan v. Smith
, 133 Ill. App. 2d 218, 272 N.E.2d 755 (1971), and 
Casey
, the 
Coleman
 court agreed that "having to pay both a replacement worker's salary during a former employee's delay in challenging his termination and that employee's back wages, if his challenge ultimately succeeds," justifies application of the 
laches
 doctrine.  
Coleman
, 207 Ill. App. 3d at 48, 565 N.E.2d at 255.  The 
Coleman
 court concluded that, for this reason, prejudice is inherent in public service cases such as this one only to the extent that the employer need not show that it hired a replacement worker 
in reliance 
on the plaintiff's delay.  
Coleman
, 207 Ill. App. 3d at 51, 565 N.E.2d at 257-58.  The fact that a replacement worker was hired at all was alone sufficient to establish prejudice.  
Coleman
, 207 Ill. App. 3d at 51, 565 N.E.2d at 257-58.  Therefore, in agreement with 
Casey
 and 
Summers
, the 
Coleman
 court determined that although prejudice might be inherent, it is not definitively presumed without the establishment of certain facts, 
i.e.
, that a replacement worker was hired for the plaintiff's position.  See 
Coleman
, 207 Ill. App. 3d at 51, 565 N.E.2d at 257; see also 
Long
, 236 Ill. App. 3d at 970, 602 N.E.2d at 858.

In this case, there is no indication from the record that the district hired an ESL teacher to replace plaintiff for the 2000-01 school year.  Without such information, prejudice cannot be established and, therefore, whether 
laches
 should have barred plaintiff's cause of action was a question of fact, which was improper for determination on summary judgment.

 Defendant next contends that the terms of plaintiff's employment contract provided her with sufficient notice that she would not be reemployed for the 2000-01 school year to satisfy the requirements of section 24-11 of the School Code.

Section 24-11 of the School Code provides: 

"Any full-time teacher who is not completing the last year of the probationary period described in the preceding paragraph, or any teacher employed on a full-time basis not later than January 1 of the school term, shall receive written notice from the employing board at least 45 days before the end of any school term whether or not he will be re-employed for the following school term.  If the board fails to give such notice, the employee shall be deemed reemployed, and not later than the close of the then current school term the board shall issue a regular contract to the employee as though the board had reemployed him in the usual manner."  105 ILCS 5/24-11 (West 2000).

We agree with the trial court that the undisputed language in plaintiff's contract, as well as the undisputed deposition testimony, showed, as a matter of law, that the contract did not comply with the terms of section 24-11.

The plain language of section 24-11 requires the school board to provide written notice to a teacher regarding whether he or she will be rehired for the following school year within 45 days of the end of the current school year.  See 
Bruso v. Alexian Brothers Hospital
, 178 Ill. 2d 445, 452, 687 N.E.2d 1014, 1016 (1997) ("[w]here the legislature's intent can be ascertained from the plain language of the statute, that intent must prevail and will be given effect without resort to other aids for construction").  Simply put, the notice must inform the teacher whether or not she will be reemployed at the school for the following term.  
Newborn v. Morrison
, 440 F. Supp. 623, 628 (S.D. Ill. 1997); 
Rockford Educational Ass'n v. Board of Education of School District No. 205
, 11 Ill. App. 3d 78, 80, 296 N.E.2d 100, 102 (1973).  The language of the November 4, 1999, employment contract between the parties did not perform this function.  The language that the contract would be null and void in June 2000 indicated simply that the contract would no longer be valid as of June.  It said nothing of whether a new contract would be offered for the following term or of plaintiff's employment for the 2000-01 term at all.

In support of this conclusion, the trial court noted that Aksamit himself testified that when the district and Bill entered into the contract in November, neither party knew or could have known whether Bill would be rehired for the 2000-01 school year.  The decision regarding which teachers to rehire was made at a board meeting in March 2000 and notices were thereafter sent out to the teachers about their employment for the next school year.  Bill did not receive a notice regarding her future employment.  Although defendant argues that Bill's actions over the summer of 2000, such as retrieving her certificate from the board and applying for other jobs, showed that she knew she would not be employed by District 99 in the 2000-01 year, we disagree.  There is a distinction between not knowing whether she would be rehired and knowing, in fact, that she would not be rehired.  Plaintiff's continuing contact with the district by mail, facsimile and telephone actually indicates that she was still unaware in August whether the district intended to rehire her, thereby supporting the conclusion that the purpose of section 24-11 had not been fulfilled.  Therefore, plaintiff's one-year contract did not provide the notification required by section 24-11.

Finally, defendant contends that the award of attorney fees to plaintiff pursuant to the Attorneys Fees in Wage Actions Act (Act) was improper.  We agree.  The Act provides in part:

"Whenever *** [an] employee brings an action for wages earned and due and owing according to the terms of the employment, and establishes by the decision of the court or jury that the amount for which he or she has brought the action is justly due and owing, and that a demand was made in writing at least 3 days before the action was brought, for a sum not exceeding the amount so found due and owing, then the court shall allow to the plaintiff a reasonable attorney fee of not less than $10, in addition to the amount found due and owing for wages, to be taxed as costs of the action."  705 ILCS 225/1 (West 2002).

As defendant points out, there is no common law right in Illinois allowing the recovery of attorney fees.  
Scoby v. Civil Service Comm'n
, 253 Ill. App. 3d 416, 417, 624 N.E.2d 439, 440 (1993).  As a result, the Act changed the common law "by permitting victorious employees to recover their attorney fees in cases where wages were 'earned and due and owing,' " and must therefore be strictly construed.  
Scoby
, 253 Ill. App. 3d at 417, 624 N.E.2d at 440; 
Swanson v. Village of Lake in the Hills
, 233 Ill. App. 3d 58, 67, 598 N.E.2d 430, 436 (1992).  The courts have unequivocally and without dissent construed this provision of the Act as not applicable to claims for back pay in wrongful discharge actions because, contrary to the requirements of the statute, such cases do not involve wages owed for work actually performed.  
Scoby
, 253 Ill. App. 3d at 418, 624 N.E.2d at 441, citing 
Schackleton v. Federal Signal Corp.
,
 196 Ill. App. 3d 437, 554 N.E.2d 244 (1989); 
Thaxton v. Walton
, 122 Ill. App. 3d 266, 461 N.E.2d 476 (1983); 
Great Northern Hotel Co. V. Leopold
, 72 Ill. App. 108 (1897).  In a wrongful discharge action, the plaintiff has 
earned
 nothing because she performed no work during the period of alleged wrongful termination.  
Scoby
, 253 Ill. App. 3d at 418, 624 N.E.2d at 441.  

Plaintiff attempts to distinguish 
Scoby
 on the grounds that the action in that case was for wrongful discharge and was not brought pursuant to the School Code.  We fail to see how this distinction makes a difference here.  Regardless of the fact that plaintiff's action was brought under the School Code, like the action in 
Scoby
, this action was for back wages for work not actually performed by plaintiff.  It is undisputed that plaintiff did not work in District 99 during the 2000-01 school year, but she is seeking back wages for that year.  Like the plaintiff in 
Scoby
, then, the wages sought were not "earned and due and owing" by plaintiff as required under the Act.  Because we see no valid reason not to apply this interpretation of the plain language of the statute as embraced in 
Scoby
, 
Schackleton
, 
Thaxton
, and 
Great Northern Hotel
, the award of attorney fees is reversed.  Given our determination we need not address defendant's argument that the award of attorney fees was improper because plaintiff failed to make a written demand three days prior to bringing the action as required by the Act.

Accordingly, the judgment of the circuit court is reversed and remanded for further proceedings in accordance with this opinion.

Reversed and remanded.

O'MALLEY, P.J. and McNULTY, J. concur.

FOOTNOTES
1:
A probationary teacher must work for four years and receive "acceptable" ratings in order to obtain tenure.

2:
Plaintiff argues that once such factual considerations are taken into account by the trial court, the standard of review is an abuse of discretion.  Even if this were so, we would find that the trial court abused its discretion in finding plaintiff's excuse sufficient to excuse her delay.